OFFICE OF the STATE PUBLIC DEFENDER (in the matter of the appointment of the state public defender in Earl Lee Parker v. Harvey D. Winnans), Appellant-Petitioner,

v.

CIRCUIT COURT FOR DODGE COUNTY, the Hon. Henry G. Gergen, Jr., presiding, Respondent.

Supreme Court

*No. 79-1431. Argued April 1, 1981.—Decided December 1, 1981.*

(Also reported in 312 N.W.2d 767.)

For the petitioner the cause was argued by *Charles Bennett Vetzner,* chief, appellate division, office of state public defender, with whom on the briefs (in this court) was *Elizabeth Alexander,* assistant state public defender.

For the respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief (in court of appeals) was *Bronson C. La Follette,* attorney general.

SHIRLEY S. ABRAHAMSON, J.   This is a review of an unpublished decision of the court of appeals filed September 23, 1980. The court of appeals affirmed the order and judgment of the Dodge county circuit court appointing the Office of the State Public Defender, over its objection, to represent Earl Lee Parker, a prisoner who had filed a *pro se* conditions-of-confinement claim.  On June 15, 1981, this court ordered the Office of the State Public Defender, which had represented Earl Lee Parker in informal efforts to settle this matter and was engaged in litigation in Dane County Circuit Court on an issue similar to the one presented by Parker, to represent Parker in his conditions-of-confinement claim.  In that order we reserved decision on the issue of whether the circuit court erred in ordering the Office of State Public Defender, over its objection, to represent a prisoner who had filed a *pro se* conditions-of-confinement claim,

pending the hearing before this court on the petition for a rule filed by the Committee on *Pro Se* Prisoner Petitions. On November 9, 1981, this court denied the petition.[1] We now conclude that the circuit court should not order the Office of State Public Defender, over its objection, to represent a prisoner who has filed a *pro se* conditions-of-confinement claim.

The facts which give rise to this issue are as follows: Parker, a prisoner at the Waupun Correctional Institute, filed a complaint in the circuit court for Dodge county alleging that his disciplinary transfer from the Wisconsin Correctional Institute at Fox Lake to Waupun without an opportunity to refute the charges brought against him violated his rights to equal protection and due process. Defendants, prison officials, answered the complaint, admitting that Parker had been transferred without being provided with a formal disciplinary proceeding but denying that he had a constitutional right to such a procedure. The Dodge county circuit court referred the matter to the Office of the State Public Defender. Following an unsuccessful informal attempt at settlement, the Office of State Public Defender advised the court that it was willing to represent Parker if the Office was successful in a Dane county circuit court case challenging the Wisconsin Correctional Camp System's policy of denying hearings to inmates accused of major disciplinary violations.

Parker then filed, again *pro se,* a motion for summary judgment. Thereafter the Dodge county circuit court

[1] The Committee on *Pro Se* Prisoner Petitions composed of University of Wisconsin Professor of Law Walter J. Dickey, Court of Appeals Judge Paul C. Gartzke, former Deputy State Public Defender Robert J. Paul, Assistant Attorney General Robert D. Repasky and Circuit Judge Thomas W. Wells, was appointed by the Chief Justice to study the effective handling of *pro se* petitions brought by inmates and confined mental patients. The Committee proposed Rule 801.86, entitled *Pro Se* Communications by Institutionalized Persons.

ordered the State Public Defender to respond "as to the matter of affording representation in this condition of confinement case as required by statute." Briefs were submitted on the issue of whether ch. 977, Stats. 1979–80, requires the State Public Defender to afford representation in conditions-of-confinement cases. The Dodge county circuit court ruled that sec. 977.05(4), Stats. 1979–80, requires the Office of the State Public Defender to represent eligible prisoners in conditions-of-confinement cases and ordered the Office to represent Parker.

The State Public Defender appealed the order requiring it to represent Parker, contending that the legislature intended in ch. 977 to vest discretion in the Office of the State Public Defender on the question of representation of inmates in conditions-of-confinement claims. Affirming the order of the Dodge county circuit court, the court of appeals reasoned that the circuit court's inherent power to appoint counsel for indigents "is not limited by the discretionary provisions contained in ch. 977." The court of appeals concluded that the Dodge county circuit court had appropriately exercised both its inherent authority to appoint counsel and its discretionary power to appoint the Office of the State Public Defender as counsel in the case at bar.

On review the Office of State Public Defender and the attorney general, representing the Dodge county circuit court, agree on two key points: (1) sec. 977.05(4), Stats. 1979–80,[2] does not require the Office to provide repre-

[2] The relevant provisions of sec. 977.05, Stats. 1979–80, stating the duties of the State Public Defender in issue in this case are as follows:

"(4) DUTIES. The state public defender shall:

". . .

"(g) In accordance with the standards under pars. (h) and (j), accept referrals from judges, courts or appropriate state agencies for the determination of indigency. If a referral is accepted and if the person is determined to be indigent in full or in

sentation in all conditions-of-confinement cases whether the request is made directly by the indigent inmate or on a referral from the circuit court;[3] and (2) the circuit

part, the state public defender shall appoint counsel in accordance with contracts and policies of the board, and inform the referring judge, court or agency of the name and address of the specific attorney who has been assigned to the case.

"(h) Accept requests for legal services from indigent persons entitled to counsel under s. 967.06 or otherwise so entitled under the constitution or laws of the United States or this state and provide such persons with legal services when, in the discretion of the state public defender, such provision of legal services is appropriate.

"(i) Provide legal services in:

"1. Cases involving persons charged with a crime against life under secs. 940.01 to 940.12.

"2. Cases involving persons charged with a felony not specified under subd. 1.

"3. Cases involving persons charged with a misdemeanor not specified under subd. 1.

"4. Cases involving persons subject to emergency detention or involuntary civil commitment under ch. 51.

"5. Cases involving children subject to adjudication as a delinquent.

"6. Cases involving persons attacking the conditions of their confinement.

"(j) At the request of any person determined by the state public defender to be indigent or upon referral of any court to prosecute a writ of error, appeal, writ of habeas corpus or other post-conviction or post-commitment remedy on behalf of such person before any court, if the state public defender is first satisfied there is arguable merit to such proceedings."

[3] The Office of State Public Defender contended, and the attorney general did not dispute, that sec. 977.05(4) does not require it to provide representation in all conditions-of-confinement cases. The State Public Defender's brief in this court sets forth the legislative history of the enactment of chapter 977 which tends to support the Office's view that the legislature intended to give the Office discretion to accept or reject representation in conditions-of-confinement cases.

The parties' interpretation of sec. 977.05(4), Stats. 1979–80, appears to be a reasonable interpretation in light of the language, context and history of the statutory provisions, in light of the administrative problems which might face the Office if the statute

court has inherent authority to appoint counsel for indigent inmates in conditions-of-confinement cases.[4] The Office of State Public Defender and the attorney general

were interpreted to require the Office to handle every inmate's confinement claim, and in light of sec. 1831, ch. 20, Laws of 1981, which modified sec. 977.05(4)(j) to read as follows:

"At the request of any person determined by the state public defender to be indigent or upon referral of any court, [to] prosecute a writ of error, appeal, writ of habeas corpus or other postconviction or post-commitment remedy or attack the conditions of confinement on behalf of such person before any court, if the state public defender *determines the case should be pursued.*" (Emphasis added.)

The comment of the Legislative Fiscal Bureau to the 1981 revision explains that the revision "[modifies] the duties of the State Public Defender to eliminate an existing statutory requirement that the office provide representation for all indigent persons attacking the conditions of their confinement. In addition, [it provides] . . . the State Public Defender with discretionary authority to determine whether a request from an indigent defendant or a court referral to prosecute a post-conviction or post-commitment remedy or a confinement challenge should be pursued by the office or not. Under current law, the office is required to handle such a request or referral if it is first satisfied there is arguable merit to the proceedings (except for confinement challenges which, as noted, is currently a mandatory duty of the office)."

In its memorandum setting forth the position of the State Public Defender on the rule proposed by the Committee on *Pro Se* Prisoner Petitions, the State Public Defender commented on the Legislative Fiscal Bureau's above quoted comment as follows:

"This interpretation of the State Public Defender's prior responsibilities in the conditions of confinement area is at odds with that taken by the State Public Defender and the Court of Appeals in *Office of the State Public Defender v. Circuit Court for Dodge County,* Case No. 79–1431. The Legislative Fiscal Bureau's view is apparently based on the trial court decision in that case. The State Public Defender requested legislative action to modify its statutory responsibilities in the conditions of confinement area immediately after the trial court decision." (Memorandum p. 4, n. 1.)

[4] *Cf. State ex rel. Fitas v. Milwaukee County,* 65 Wis. 2d 130, 134, 221 N.W.2d 902 (1974); *Carpenter v. Dane County,* 9 Wis. 249 (*274) (1859).

disagree as to whether the Office must represent an inmate in a conditions-of-confinement case if, by order, the circuit court directs such representation in a particular case. The Office of State Public Defender argues that the circuit court's inherent power to appoint counsel for indigents does not extend to ordering the State Public Defender to act as counsel in conditions-of-confinement cases where the Office has refused to provide representation in the individual case pursuant to the discretionary power granted it by the legislature. The position of the attorney general, in contrast, is that if the circuit court directs the Office of the State Public Defender to represent an indigent inmate in his conditions-of-confinement claim, a category of cases within the State Public Defender's statutory authority, sec. 977.05 (4) (i) 6, the State Public Defender has no power or right to refuse to act as counsel.

The narrow question, then, which both parties have briefed and argued, is whether in the exercise of the circuit court's inherent power to appoint counsel in conditions-of-confinement cases, the circuit court should appoint the Office of State Public Defender when the Office, after investigation, advises the circuit court that the Office declines to provide representation. We do not find the answer to this question in ch. 977 of the statutes. The answer to this question does not lie in determining the scope or nature of the limitations, if any, set forth in ch. 977 either on the Office of State Public Defender in its exercise of discretion in representing or refusing to represent inmates or on the circuit court's inherent authority to appoint the State Public Defender as counsel. Nor need the answer be predicated on the scope or nature of limitations, if any, set forth in the state constitution on the power of the legislature to regulate appointment by circuit courts of counsel in judicial proceedings.

■ The answer to the question lies instead in the application of principles of sound administration of the courts and the judicial system. The case must be put into proper perspective. We are dealing with one aspect of the question of how the judicial system should process inmates' conditions-of-confinement claims, namely, appointment of counsel. We do not treat the question of how the circuit court should process these *pro se* claims and determine which claims merit the appointment of counsel.[5] We deal only with the issue before us—the circuit

[5] The management of prisoner suits has to date primarily been the subject of attention in the federal courts and in the literature. *See* Prisoner Civil Rights Committee, Federal Judicial Center, *Recommended Procedures for Handling Prisoner Civil Rights Cases in Federal Courts* (Tent. Report Nov. 2, 1977); Abdalian & Lachman, *Federal Courts and Small Claims: Prisoners Section 1983 Actions and Section 1983,* 33 Ark. L. Rev. 91 (1979); Hirschkop & Grad, *Sections 1983 Litigation: Plaintiff's View,* 11 U. Rich. L. Rev. 785 (1977); Johnson, *Observation—The Constitution and the Federal District Judge,* 54 Tex. L. Rev. 903 (1976); Miller, *Section 1983 Litigation: Defendant's View,* 11 U. Rich. L. Rev. 791 (1977); Turk, *Forward, Access to the Federal Courts by State Prisoners In Civil Rights Actions,* 64 Va. L. Rev. 1349 (1978); Turner, *When Prisoners Sue: A Study of Prisoner Section 1983 Suits in the Federal Courts,* 92 Harv. L. Rev. 610 (1979).; Note, *Complex Enforcement: Unconstitutional Prison Conditions,* 94 Harv. L. Rev. 626 (1981); Note, *A Review of Prisoners' Rights Litigation Under 42 U.S.C. Section 1983,* 11 U. Rich. L. Rev. 803 (1977); Note, *Prisoners, 1983, and the Federal Judge as Warden,* 9 U. Tol. L. Rev. 873 (1978); Comment, *Confronting the Conditions of Confinement: An Expanded Role for Courts in Prison Reform,* 12 Harv. Civ. Rts. Civ. Lib. L. Rev. 366 (1977).

For a discussion of the right of prisoner access to the courts and of the means of fulfilling it, *see* Potuto, *The Right of Prisoner Access: Does Bounds Have Bounds?,* 53 Ind. L. J. 207 (1977–78). For a discussion of *Bounds v. Smith,* 430 U.S. 817 (1977), *see* Note, *Payne v. Superior Court: The Indigent Prisoner's Right to Counsel in a Civil Suit,* 13 Ida. L. Rev. 415 (1977); Note, *Constitutional Law—States Must Protect the Rights of Prisoners to Access to the Courts by Providing Them With Assistance of*

court's appointment of counsel when the circuit court determines counsel should be appointed and the Office of State Public Defender has, after referral, refused to represent the inmate.

This case does not involve any explicit or implicit effort by the Office of State Public Defender either to narrow inmate access to courts by restricting the availability of counsel in conditions-of-confinement cases or to avoid responsibility for handling conditions-of-confinement cases. The briefs and oral argument of the Office make clear that the State Public Defender's policy has been to provide representation in conditions-of-confinement cases and that this policy will continue to the maximum extent the Office's resources and priorities for litigation permit. Indeed, at oral argument the State Public Defender indicated that it wished circuit courts to refer inmates' conditions-of-confinement claims to its Office.

Nor does this case involve any explicit or implicit effort by the courts of the state to restrict inmates' access to the judicial system or to avoid responsibility for handling conditions-of-confinement cases. As the brief of the State Public Defender points out, Henry G. Gergen, Jr., Dodge county circuit judge, has "distinguished himself by his concern that inmate litigants in his court receive a fair hearing." Thus both the circuit court and the State Public Defender are, in this case, asking us to

_Counsel, Free Transcripts, Law Libraries or Alternative Sources of Legal Knowledge, Bounds v. Smith, 430 U.S. 817, 97 S. Ct. 1491 (1977)_, 5 Tex. So. U. L. Rev. 177 (1978); Recent Developments, _Constitutional Law—Corrections—Prisoner's Constitutional Right of Access to Courts Imposes Duties on State to Provide Prison Law Libraries_, 26 Vill. L. Rev. 613 (1977–78); _Prison Law Library Service: Questions and Models_, 72 L. Lib. J. 598 (1979).

There has also been discussion of the impact of prisoner suits on the legal system and the lawyer, _see_ Alpert, _Prisoner's Right of Access to Courts: Planning for Legal Aid_, 51 Wash. L. Rev. 653 (1976).

resolve the difficult question of how best to handle the appointment of counsel in condition-of-confinement cases.

It is apparent that if we were to require the Office of State Public Defender to accept all circuit court appointments as counsel in conditions-of-confinement cases, these appointments might generate a large volume of cases which the Office might not be able to handle properly. We observe that it is the policy of the Public Defender's Office, in view of that office's finite resources, to carry out a planned program of litigation and other services which necessarily require an allocation of resources. Allocation of resources is not merely good administrative practice, but may, in certain instances, be required as a matter of conscientious commitment to the obligations imposed by the Code of Professional Responsibility. *See* SCR 20.31 (1980);[6] ABA Committee on Ethics and Professional Responsibility, Formal Opinion

[6] "SCR 20.31   A lawyer should represent a client competently.

"(1) Ethical consideration. Because of his or her vital role in the legal process, a lawyer should act with competence and proper care in representing clients. He or she should strive to become and remain proficient in his or her practice and should accept employment only in matters which he or she is or intends to become competent to handle.

". . .

"(4) Ethical consideration. . . . In addition to being qualified to handle a particular matter, his or her obligation to his or her client requires him or her to prepare adequately for and give appropriate attention to his or her legal work.

". . .

"SCR 20.32   Failing to act competently.

"A lawyer may not:

"(1) Handle a legal matter which the lawyer knows or should know that he or she is not competent to handle, without associating with a lawyer who is competent to handle it.

"(2) Handle a legal matter without preparation adequate in the circumstances.

"(3) Neglect a legal matter entrusted to the lawyer."

334 (1974),[7] and Informal Opinion 1359 (1976).[8] The interests of defendants, of inmates, of the public, and of the legal system are not well served if the Office of

[7] Formal Opinion 334 states in pertinent part, as follows:

"2. **Independence of Judgment**

"Canon 5 requires a lawyer to exercise independent professional judgment on behalf of a client. To what extent may a governing board prescribe organizational rules and regulations or operational methods of a legal services office to limit or restrict the activities of lawyers acting on behalf of clients of the office without placing those lawyers in violation of the duty to exercise their independent judgment in legal matters? DR 5-107(B).

"We hold that the activities on behalf of clients of the staff of lawyers of a legal services office may be limited or restricted only to the extent necessary to allocate fairly and reasonably the resources of the office and establish proper priorities in the interest of making maximum legal services available to the indigent, and then only to an extent and in a manner consistent with the requirements of the Code of Professional Responsibility."

[8] "Informal Opinion 1359 Use of Waiting Lists or Priorities by Legal Service Office: Your question to this [American Bar Association Committee on Ethics and Professional Responsibility] is the following:

"Does the refusal of the directors of a legal services office to institute a system of priorities or waiting lists, resulting in an unmanageable caseload for each staff attorney, cause staff attorneys who handle clients to violate the Disciplinary Rules?

"The delineation of limits of services of legal aid offices has been criticized because indigents, unlike other clients, have no alternative lawyer representative. Formal Opinion 334 recognized, however, that reality mandates some allocation of limited resources and, therefore, sanctioned restrictive schemes 'to the extent necessary to allocate [resources] fairly and reasonably . . . and to establish proper priorities in the interest of making maximum legal services available.' The Opinion indicates that the refusal to set restrictions is entirely proper. However, in an office with finite resources, failure to institute priorities may limit the quality although not the quantity of legal aid.

"Notwithstanding the argument that fairness and reason are best served by giving all indigents some although perhaps inadequate legal advice, Formal Opinion 334 requires any limitation be 'in a manner consistent with the requirements of the Code of Professional Responsibility.' Disciplinary Rules 6-101(A)(2) and

State Public Defender is forced to represent a substantially greater number of persons than the Office's resources realistically permit. The maintenance of inmate access to the courts, *Bounds v. Smith,* 430 U.S. 817 (1977), requires not only an open route to the courthouse but an assurance that if representation is afforded, the representation be competent to provide pursuit of the claim.

We conclude, as did both parties and the court of appeals, that circuit courts have inherent authority to appoint counsel for indigent inmates in conditions-of-confinement cases. Nevertheless, in the interest of orderly administration of justice and in the exercise of our superintending and administrative authority over the courts

(3) forbid a lawyer's handling 'a legal matter without preparation adequate in the circumstances' or 'neglect[ing] a legal matter entrusted to him.' The refusal to set up priorities is improper if it causes a violation of DR 6–101.

"In order to insure the adequacy of legal services and to protect against violations of DR 6–101, directors may wish to impose priorities. However, Formal Opinion 334 requires that any limitation on acceptance of employment be established before a staff lawyer accepts representation of any particular client. After acceptance, no after established standards can be permitted to interfere with the lawyer's independent professional judgment in handling that particular matter.

"The refusal by directors of legal services offices to establish priorities could result in Code violations if it causes 'inadequate preparation' or 'neglect' by a staff lawyer within the meaning of DR 6–101. A priority system or other caseload limitation may be established if it is a fair and reasonable method of making maximum legal services available to the indigent and not inconsistent with the Code. The policy must be established before a staff attorney accepts representation of a particular client so that the lawyer's judgment regarding the representation in pending matters will not thereby be affected. See EC 5–23, EC 5–24, EC 6–3 and EC 6–4."

pursuant to sec. 3, Art. VII, Wis. Const.,[9] we conclude that circuit courts should not order the Office of State Public Defender to act as counsel for indigent inmates in conditions-of-confinement cases in which the Office has declined to offer representation. We conclude that the following procedure should be employed by the circuit court in a case such as the one before us when it determines that counsel should be appointed to represent an inmate in a *pro se* conditions-of-confinement claim: The circuit court should refer the *pro se* conditions-of-confinement claim to the Office of State Public Defender for representation. The Office should review any such referral and promptly advise the circuit court in writing whether or not it will represent the inmate. If the Office refuses to represent the inmate, the circuit court should appoint counsel for the inmate in the conditions-of-confinement case other than the Office of State Public Defender. We believe this procedure is consistent with the public policy set forth by the legislature in Ch. 977, with the professional and statutory obligations of the Office of State Public Defender, and with the needs of the inmates, the judicial system, and the public.

For the reasons set forth, we reverse the decision of the court of appeals and vacate the order of the circuit court.

*By the Court.*—Decision of the court of appeals reversed; order of the circuit court vacated.

---

[9] "The supreme court shall have superintending and administrative authority over all courts." Art. VII, sec. 3, Wis. Const. *See McEwen v. Pierce County*, 90 Wis. 2d 256, 269 n. 8, 279 N.W.2d 469 (1979).