STATE of Wisconsin EX REL. Nicholas L. CHIARKAS, State Public Defender, Petitioner,

v.

Jon B. SKOW, Circuit Judge, Branch 3, Racine County, Circuit Court, Individually and as a Representative of a Class of Judges, Respondent.

Supreme Court

*No. 89-2399-W. Argued November 28, 1990.—Decided February 19, 1991.*

(Also reported in 465 N.W.2d 625.)

124

For the petitioner there was oral argument by *Eric Schulenburg,* assistant state public defender.

For the respondent there was oral argument by *Laura Dulski,* assistant attorney general.

CALLOW, WILLIAM G., J.   This case is before this court on certification from the court of appeals pursuant to sec. (Rule) 809.61, Stats.

The State Public Defender petitioned the court of appeals, seeking a writ of prohibition directed to the Circuit Court for Racine County, Judge Jon B. Skow. In the alternative, the State Public Defender sought a declaratory judgment that Wisconsin circuit courts did not have the authority to appoint the Public Defender's office to represent non-indigent parties.

The court of appeals recognized its lack of jurisdiction to grant a declaratory judgment as an original matter. *State ex rel. Swan v. Elections Bd.,* 133 Wis. 2d 87, 97, 394 N.W.2d 732 (1986). Relying on its authority to

consider writs of prohibition, however, the court accepted the petition under its supervisory power, and certified the petition to this court for review and determination.

Certification is appropriate for appeals or other proceedings before the court of appeals. We accepted the certified proceeding of the writ of prohibition as it was within the jurisdiction of the court of appeals. Had the relief sought in the court of appeals been limited to an original action for declaratory judgment as a matter *publici juris,* the court of appeals would have been required to dismiss the proceeding.

We should not have accepted the declaratory judgment portion of the certification as the court of appeals was without jurisdiction to certify that proceeding. However, we did not sever this portion, and the court has decided to resolve the declaratory judgment issue in the interest of judicial efficiency. A declaratory judgment is the preferred method of resolving this problem, as a writ of prohibition is an extraordinary remedy, appropriate only when no other adequate remedy is available. *State ex rel. Cullen v. Ceci,* 45 Wis. 2d 432, 439, 173 N.W.2d 175 (1970).

We recognize the importance of the *publici juris* nature of this issue and the need for a prompt resolution of this case. Notwithstanding the procedurally inappropriate manner in which the request for declaratory judgment reached this court, we render such judgment in this case.

The State Public Defender petitioned the court for relief from a standing order entered by Judge Skow. This order required that the Racine County Public Defender's Office provide representation for all respondents in sec. 51.20, Stats., civil commitment proceedings, regardless of financial eligibility. We conclude that the circuit

court's inherent and statutory authority to appoint counsel for litigants does not extend to the issuance of such an order.

The relevant facts follow: At a civil commitment hearing on September 22, 1989, before the Racine County Circuit Court, B.P. (an allegedly mentally ill individual) appeared with counsel from the Racine County Public Defender's Office (Ann Devitt). At this hearing, Devitt informed the court that B.P. did not wish to be represented by the Public Defender's Office, preferring to contact her own attorney. Devitt further informed the court that B.P. did not satisfy the statutory indigency requirements[1] and therefore did not qualify for Public Defender representation. Based on his review of secs. 967.06,[2] 977.05(4)(g),[3] 977.07(3)[4] and

---

[1] The Public Defender makes indigency determinations pursuant to the guidelines in sec. 977.07, Stats.

[2] Section 967.06, Stats., provides, in part:

**Determination of indigency; appointment of counsel; preparation of record.** As soon as practicable after a person has been detained or arrested in connection with any offense which is punishable by incarceration, or in connection with any civil commitment proceeding, or in any other situation in which a person is entitled to counsel regardless of ability to pay under the constitution or laws of the United States or this state, the person shall be informed of his or her right to counsel. Persons who indicate at any time that they wish to be represented by a lawyer, and who claim that they are not able to pay in full for a lawyer's services, shall immediately be permitted to contact the authority for indigency determinations specified under s. 977.07(1).

[3] Section 977.05(4)(g), Stats., provides, in part:

(4) DUTIES. The state public defender shall:

. . ..

(g) In accordance with the standards under pars. (h) and (j), accept referrals from judges, courts or appropriate state agencies for the determination of indigency.

51.20(3),[5] Stats., the circuit court judge denied Devitt's motion to withdraw as counsel for B.P. Additionally, he entered a standing order that, "pursuant to 51.20, that provision that says '. . . the court shall assure that the subject individual is represented by adversary counsel,' that the Racine Public Defender's Office will provide representation for all persons at that juncture under 51.20 until such time as the Public Defender can make arrangements, if the Public Defender wishes to try to make arrangements to challenge that, to cite authority for the proposition that Racine County should be the entity compelled to pay."

The circuit court judge further stated, "if there are any persons in the future who are similarly situated to Miss [P.], that the Public Defender must represent those persons at that time because the linchpin is the statutory mandate, '. . . the court shall assure . . .' all of the persons have lawyers." He refused to order the county clerk of courts to pay for this counsel on the grounds that the county had no account from which to pay for such counsel, and the Public Defender had cited no authority for the proposition that the county should pay for this counsel.

---

[4]Section 977.07(3), Stats., provides, in part:

**(3)**  A circuit court may review any indigency determination upon its own motion or the motion of the defendant and shall review any indigency determination upon the motion of the district attorney or the state public defender.

[5]Section 51.20(3), Stats., provides:

**(3)**  LEGAL COUNSEL. At the time of the filing of the petition the court shall assure that the subject individual is represented by adversary counsel. If the individual claims or appears to be indigent, the court shall refer the person to the authority for indigency determinations specified under s. 977.07(1).

The State Public Defender petitioned the court of appeals for "Declaratory Relief and/or Writ of Prohibition." This case is presently before this court on certification from the court of appeals pursuant to sec. (Rule) 809.61, Stats., and this court considers the arguments raised by the State Public Defender in its petition and the response by the circuit court.

We begin by examining the nature and purpose of a declaratory judgment.[6] The scope of a declaratory judgment is found in sec. 806.04(1), Stats.[7] Declaratory judgments are entered pursuant to sec. 806.04(6), and are intended to "afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and [this section] is to be liberally construed and

---

[6]The respondent, in his response to the Public Defender's petition, argued that a writ of prohibition was an inappropriate remedy, but did not contest the appropriateness of declaratory relief in this case. Under such circumstances we normally would not discuss the need for such relief because the parties have not raised this as an issue. In this case, however, the respondent failed to address this issue not because he agreed that declaratory judgment was an appropriate remedy, but rather because he believed it to be a moot issue. The court of appeals, in an order to the parties on January 11, 1990, stated that it could not grant a declaratory judgment. The respondent did not have an opportunity to brief this issue in writing to the supreme court. For these reasons, we address the appropriateness of declaratory relief in this case.

[7]Section 806.04(1), Stats., provides, in part:

(1) SCOPE. Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed . . . .. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

131

administered." Section 806.04(12); *Klaus v. Vander Heyden,* 106 Wis. 2d 353, 358, 316 N.W.2d 664 (1982). Declaratory judgments are not to be advisory in nature, but should "terminate the controversy or remove an uncertainty." Section 806.04(5).

In *Loy v. Bunderson,* 107 Wis. 2d 400, 410, 320 N.W.2d 175 (1982), we explained the requirement that a "justiciable controversy" must exist to render a declaratory judgment appropriate. We stated,

> There must exist a justiciable controversy—that is to say:
> (1) A controversy in which a claim of right is asserted against one who has an interest in contesting it.
> (2) The controversy must be between persons whose interests are adverse.
> (3) The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.
> (4) The issue involved in the controversy must be ripe for judicial determination.

*Loy,* 107 Wis. 2d at 410 (quoting Borchard, *Declaratory Judgments,* pp. 26–57 (1st ed. 1934)). *See also City of Madison v. Town of Fitchburg,* 112 Wis. 2d 224, 228, 332 N.W.2d 782 (1983); *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 239 N.W.2d 313 (1976) (where we applied these standards to a request for declaratory judgment originated in this court).

The granting of declaratory relief in this case is appropriate, because a justiciable controversy exists between the circuit court and the Racine County Public Defender's Office. Applying the *Loy* test: First, the circuit court claims the right to appoint the Public

132

Defender to represent non-indigent individuals in civil commitment proceedings. Because of the potential impact on the Public Defender's workload, the Public Defender has an interest in contesting this asserted right. Second, the circuit court is interested in finding counsel for indigent and non-indigent individuals as a result of its statutory mandate, sec. 51.20(3), Stats.; this interest is adverse to that of the Public Defender, whose legislative role is limited to assisting certain indigent individuals. Section 977.05(4)(g), Stats. Third, the Public Defender has a legally protectible interest in the controversy. While cases which have addressed "legally protectible interests" have addressed tangible interests such as a lake bed, *Madison v. Wisowaty,* 211 Wis. 23, 247 N.W. 527 (1933), or profits from the sale of property, *Klaus,* 106 Wis. 2d at 353, the statute itself calls for a liberal construction of its language. Section 806.04(12), Stats. As the Public Defender asserts, sec. 977.05(4)(g) authorizes Public Defender representation only in cases of indigency. This statute does not authorize the Public Defender to represent non-indigent individuals at state expense. In this regard, the Public Defender has a legally protectible interest in the controversy.

Finally, the issue is ripe for judicial determination. A case is ripe when the facts are "sufficiently developed to admit of a conclusive adjudication." *Lynch,* 71 Wis. 2d at 674 (quoting Borchard, *supra,* at 56). This case is not uncertain, the rights of the interested parties are ascertained, current, and not merely contingent. *See id.* at 675. A declaratory judgment clarifies the legal relations in issue, and removes the uncertainty as to the rights and status of the respective parties. *See State ex rel. Sundby v. Adamany,* 71 Wis. 2d 118, 125-26, 237

133

N.W.2d 910 (1976); *see also* Borchard, *Declaratory Judgments* 299 (2d ed. 1941).

Counsel for Judge Skow contends that this issue is moot because Judge Skow's standing order is not being followed or enforced. There is a substantial likelihood that this matter will reoccur under the standing order, and therefore the issue remains justiciable. *See* 10A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure,* sec. 2757, 617–18 (2d ed. 1983). Also, this matter is *publici juris* because it affects the representation of both indigent and non-indigent defendants, and requires a prompt and authoritative determination by this court. *See Labor & Farm Party v. Elections Bd.,* 117 Wis. 2d 351, 352, 344 N.W.2d 177 (1984); *State ex rel. La Follette v. Stitt,* 114 Wis. 2d 358, 362, 338 N.W.2d 684 (1983); *State v. Seymour,* 24 Wis. 2d 258, 261, 128 N.W.2d 680 (1964). This question is one of paramount importance because it involves whether or not the circuit court may order the State Public Defender to represent non-indigent individuals, and has profound implications upon the ability of the State Public Defender to represent those indigent individuals it has been charged to represent. For these reasons and because we determine that a justiciable controversy exists, we exercise our discretion to enter a declaratory judgment in this matter.

Additionally, because this judgment terminates the controversy between the parties, we will not address the propriety of a writ of prohibition. As stated earlier, a writ of prohibition is an extraordinary remedy, to be used only when no other adequate remedy is available. *Cullen,* 45 Wis. 2d at 439; *State ex rel. Beaudry v. Panosian,* 35 Wis. 2d 418, 423–24, 151 N.W.2d 48 (1967). Our

declaratory judgment in this case resolves the controversy between the Racine County Circuit Court and the Public Defender's Office; a writ of prohibition is unnecessary.

We next address the merits of the request for a declaratory judgment. In *Office of the State Public Defender v. Circuit Court for Dodge County,* 104 Wis. 2d 579, 312 N.W.2d 767 (1981), we addressed the issue of whether a circuit court could order the State Public Defender to represent indigent inmates in "conditions-of-confinement" cases over the State Public Defender's objection. We held that, while the circuit courts had inherent authority to appoint counsel in such cases, in the interest of orderly administration of justice, circuit courts should not order the Office of the State Public Defender to act as counsel in such cases if the State Public Defender declined to provide representation. *Dodge County,* 104 Wis. 2d at 590–91. We resolved the issue by applying "principles of sound administration of the courts and the judicial system." *Id.* at 586. We stated,

> [i]t is apparent that if we were to require the Office of the State Public Defender to accept all circuit court appointments as counsel in conditions-of-confinement cases, these appointments might generate a large volume of cases which the Office might not be able to handle properly . . .. The interests of defendants, of inmates, of the public, and of the legal system are not well served if the Office of State Public Defender is forced to represent a substantially greater number of persons than the Office's resources realistically permit.

*Id.* at 588–90.

Our decision in *Dodge County* involved a discretionary decision by the State Public Defender, and we held that when the State Public Defender exercised its discretion to decline representation in conditions-of-confinement cases, the circuit court should not order the State Public Defender to represent these inmates, but should instead appoint other counsel. This procedure, we stated, was "consistent with the public policy set forth by the legislature in Ch. 977, with the professional and statutory obligations of the Office of State Public Defender, and with the needs of the inmates, the judicial system, and the public." *Id.* at 591. For these same reasons, we vacate Judge Skow's standing order. It is not in the best interests of the judicial system to routinely order public defender representation of non-indigent individuals when the enabling legislation does not provide for such representation. To permit such an order would overburden a public defender office that has not been financed or staffed for such an event, and would frustrate the legislative goal of providing legal representation for those individuals financially unable to provide their own representation. Although this case involves representation not provided for by statute, whereas *Dodge County* involved discretionary representation, the same principles of "sound administration" apply.

This case raises the following questions which were not raised in *Dodge County*: (1) Does the circuit court have the authority to appoint the State Public Defender in the unique and unusual case where private counsel is unavailable?; and (2) In such a situation, which entity is responsible for payment? As to the first question, the State Public Defender urges us to hold that the circuit court may never appoint the State Public Defender to represent non-indigent individuals because the enabling

statute (Ch. 977) only provides for the representation of indigent individuals. The State Public Defender reasons that this statute therefore forbids the State Public Defender from representing non-indigent individuals, and this statute takes precedence over the general inherent power of the court to appoint counsel. We disagree.

We addressed the court's inherent authority to appoint counsel in *Contempt in State v. Lehman,* 137 Wis. 2d 65, 403 N.W.2d 438 (1987). We stated,

> [t]his court has explicitly stated that courts possess the inherent power to appoint counsel: "It is within the inherent power of the courts to appoint counsel for the representation of indigents." *State ex rel. Fitas v. Milwaukee County,* 65 Wis. 2d 130, 134, 221 N.W.2d 902 (1974).

*Lehman,* 137 Wis. 2d at 76. We further stated, "[t]he trial court has the authority to appoint counsel whenever in the exercise of its discretion it deems such action necessary." *Id.* While *Lehman* refers to the power to appoint counsel for indigent defendants, *Fitas* is not as restrictive. In *Fitas,* we stated,

> [w]e conclude, without difficulty, that the appointment of counsel ought to be made by a judge or under the aegis of the judicial system. Attorneys are officers of the court and the duty to furnish representation derives from constitutional provisions that place the responsibility upon courts. That responsibility has been traditionally discharged by courts. *See Carpenter v. Dane County* (1859), 9 Wis. 249 (*274); *Gideon v. Wainwright* (1963), 372 U.S. 335, 83 Sup. Ct. 792, 9 L. Ed. 2d 799.

*Fitas,* 65 Wis. 2d at 134. This inherent authority is derived not from the individual's constitutional right to

counsel, but rather is inherent to serve the interests of the circuit court. *Lehman,* 137 Wis. 2d at 76.

We also stated in *Lehman* that,

> [t]here is no support for the argument, however, that the creation of the program [State Public Defender Office] "occupied the field" with respect to appointment of counsel or was "exclusive" in the sense that the inherent power of the court was thereby negated or circumscribed in circumstances where the Public Defender declines to act.

*Id.* at 77. Again, we addressed a situation in *Lehman* where the State Public Defender had exercised its discretion in declining to represent an indigent individual (as in *Dodge County*). While this case does not involve a declination to act, but a situation where representation is not provided by statute, the same reasoning is applicable. Attorneys working for the State Public Defender are not "exclusive" representatives of the Office of the State Public Defender, they are also officers of the court. *See Fitas,* 65 Wis. 2d at 134. They are not exempted from representing non-indigent individuals solely by virtue of their position with the State Public Defender's Office. Such an appointment should be exercised only in rare and unusual circumstances, however. We recognize the general inherent authority of the circuit court to appoint counsel when the court determines it appropriate. However, we also recognize that the legislature has directed the State Public Defender to provide limited services. Because the State Public Defender has been created to represent indigent individuals, and any representation of non-indigent individuals diminishes the State Public Defender's ability to fulfill that legislative goal, the circuit court should appoint counsel from the private bar as

a matter of general practice.[8]

In any event, we do not hold that the circuit court may never appoint the State Public Defender to represent non-indigent individuals. We recognize that there may be situations such as in footnote 8 where other counsel is not available, and the circuit court must, in its discretion, appoint the State Public Defender to represent non-indigent individuals for efficiency and in furtherance of its judicial purposes. *See Lehman,* 137 Wis. 2d at 76. When no other reasonable alternative is available and the circuit court explicitly states the need to exercise its discretion, the circuit court may appoint counsel from the State Public Defender's Office to represent non-indigent individuals.

Finally, the question is raised as to which governmental entity should pay for the representation of non-indigent individuals in the event the circuit court is forced to appoint private counsel or the State Public Defender to represent non-indigent individuals in such a

---

[8]This case presents a factual pattern which illustrates the potential problems that may arise in finding counsel for non-indigent individuals. In civil commitment cases, the circuit court is required to ensure that the subject individual is represented by counsel. Section 51.20(3), Stats. Additionally, if the individual is subject to emergency detention, sec. 51.15, that individual cannot be detained for more than seven days without a probable cause hearing. Section 51.20(7)(a). These statutes may require that the circuit court implement a special procedure to provide emergency counsel at county expense for those individuals (even if non-indigent) who have been unable to procure counsel. This illustrates a situation where the legislature mandates certain procedures without providing funding. Such a situation may require legislative attention.

situation. We conclude that the responsibility for payment in such cases rests with the county.

We have addressed this question under several different circumstances. In *Romasko v. City of Milwaukee,* 108 Wis. 2d 32, 321 N.W.2d 123 (1982), we addressed the situation of whether the county should compensate a guardian ad litem that the court was required to appoint, pursuant to sec. 803.01(3), Stats. 1979-80, and sec. 757.48(1), Stats. 1979-80. *Romasko,* 108 Wis. 2d at 35. We concluded that when the court appoints a guardian ad litem to represent an indigent minor and there was no statutory provision for fee payment, the county of venue must pay the fees. *Id.* at 36-37. We also concluded that these fees were operating costs of the court under sec. 753.19, Stats. 1979-80,[9] because services of a guardian ad litem were services to the court. *Id.* at 42. Under sec. 753.19, these costs were to be paid by the county.

In *Lehman,* we addressed the situation where the court ordered a private attorney to represent an indigent felon who had discharged the attorneys from the Public Defender's Office who had been appointed to represent him. The circuit court eventually allowed Lehman to proceed on a *pro se* basis, appointing private counsel to assist him on a stand-by basis only. *Lehman,* 137 Wis. 2d at 71-72. We adopted the rationale of *Romasko* and held that the county should pay for the stand-by counsel, because this was an operating cost of the court under sec. 753.19, Stats. We determined that the appointment of

---

[9] Section 753.19, Stats. (1979-80), provides:

**Operating costs; circuit court.** The cost of operation of the circuit court for each county, except for the salaries of judges and court reporters provided to be paid by the state, and except for the cost assumed by the state under this chapter and chs. 40, 41 and 230, and except as otherwise provided, shall be paid by the county.

counsel was essential, and therefore, as in *Romasko,* a "necessary cost of the operation of the court." *Id.* at 83.

The services of counsel in representing individuals in civil commitment hearings are no less essential to the efficient operation of the court than those cases where counsel serves as guardian ad litem or represents criminal defendants. The fact that the represented individuals in *Romasko* and *Lehman* were both indigent is irrelevant to this point because counsel is appointed here, as there, for the benefit of the court, not for the benefit of the individual. The services of appointed counsel for non-indigent individuals in civil commitment hearings is an operating cost to the court which is not within one of the exceptions in sec. 753.19, Stats., and should be paid by the county, not the State Public Defender.[10] In the case of non-indigent individuals, the county may pursue the merits of a claim for reimbursement from the individual.

. The standing order of the circuit court for Racine County, Judge Jon B. Skow, is vacated. The circuit court should not appoint the State Public Defender's Office to represent non-indigent individuals, except under unique and unusual circumstances as described above.

*By the Court.*—Order vacated, rights declared.

SHIRLEY S. ABRAHAMSON, J. (concurring). I agree that the circuit court's order in this case is invalid and the circuit court may not order the State Public Defender to represent parties who are not statutorily

---

[10]Unlike the petitioner in *Romasko,* the Racine County Public Defender's Office has not petitioned the court for payment from the county for the services it rendered to B.P. For this reason, we do not address whether or not Racine County must compensate the Racine County Public Defender for representing B.P. in her civil commitment proceedings.

indigent, except under unique and unusual circumstances.

Unlike the majority, I do not view this case as an original action in this court for declaratory judgment. As the majority opinion correctly concludes, majority op. at 128, the court of appeals had original supervisory jurisdiction over this case.[1] When we accepted certification of the case, the case became an original supervisory action in this court. See *State v. Holmes,* 106 Wis. 2d 30, 37, 315 N.W.2d 703 (1981) (by-pass granted on petition for supervisory writ filed in court of appeals).

Once this court takes jurisdiction over the case, it can grant the petitioner whatever relief is appropriate.[2] I therefore believe that there is no need for this court to recharacterize the case one of *publici juris* original jurisdiction in order for this court to grant declaratory relief.

Citing *State ex rel. Swan v. Elections Bd.,* 133 Wis. 2d 87, 394 N.W.2d 732 (1986), both the majority opinion and the court of appeals conclude that the court of appeals cannot grant declaratory relief in a supervisory action within its jurisdiction. This is an unfortunate interpretation of *Swan. Swan* limited the court of

[1]The court of appeals' jurisdiction is based on art. VII, sec. 5(3), Wis. Const., which provides that "the court of appeals shall have supervisory jurisdiction over all actions and proceedings in the courts in the district." See also sec. 752.02, Stats. 1989-90. The court of appeals' supervisory jurisdiction was described as original jurisdiction in *State ex rel. Swan v. Elections Bd.,* 133 Wis. 2d 87, 93, 394 N.W.2d 732 (1986).

[2]In exercising its constitutional grant of superintending power to control the course of litigation in trial courts, this court has said that this court is not restricted to the use of common law writs but "is limited only by the necessities of justice." *State ex rel. Reynolds v. County Court,* 11 Wis. 2d 560, 565, 105 N.W.2d 876 (1960), quoted with approval *State ex rel. Memmel v. Mundy,* 75 Wis. 2d 276, 281, n.1, 249 N.W.2d 573 (1976).

appeals' original jurisdiction in cases unrelated to its appellate or supervisory power. This case, unlike *Swan,* falls within the court of appeals' original supervisory jurisdiction. Because the case is within the court of appeals' supervisory jurisdiction, the court of appeals should, in my opinion, be able to grant whatever relief is appropriate.[3]

As the court explained in *Swan,* 133 Wis. 2d at 93, "the court of appeals is intended to be a high-volume, error-correcting court, having a close relationship to the circuit courts in respect to the superintending control of circuit court functions." A narrow construction of the original supervisory jurisdiction of the court of appeals is, I believe, injurious to litigants and to the court system of the state. A narrow construction inhibits the court of appeals' power to do justice for the litigants in a case in which the court of appeals has supervisory jurisdiction, unnecessarily limits the court of appeals' powers in exercising supervisory jurisdiction, and requires this court to hear additional original actions.

For the reasons set forth, I concur.

---

[3]This court is not, as I explained above, see note 2 and text, restricted to the writs in exercising its superintending power. This court has not considered the differences, if any, between this court's superintending power over actions and proceedings in the trial courts and the court of appeals supervisory authority over actions and proceedings in the trial courts in the district. Our court has used the terms superintending and supervisory interchangeably in its opinions discussing this court's constitutional superintending powers over litigation. This court also used the term "superintending" in describing the court of appeals' supervisory powers. *Swan,* 133 Wis. 2d at 93.