COURT OF APPEALS
DECISION
DATED AND FILED

June 3, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP566-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2015CF589

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BRIAN T. FLATOFF,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Winnebago County: JOHN A. JORGENSEN, Judge.  *Affirmed*.

Before Neubauer, P.J., Gundrum, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Brian T. Flatoff appeals the judgment convicting him of numerous charges—including false imprisonment, attempted homicide, and

felony murder. He also appeals the order denying his postconviction motion. On appeal, Flatoff argues that the trial court erred in finding that he waived and forfeited his right to counsel during trial. He also argues that the court erred in appointing one of his public defenders as standby counsel. We affirm.

## BACKGROUND

¶2 Following a confrontation in which he took hostages and opened fire on police at Eagle Nation Cycles in Neenah, Flatoff was charged in December 2015 with a number of crimes, including: false imprisonment, recklessly endangering safety, attempted homicide, felony murder, and felony bail jumping. Flatoff was assigned a public defender to represent him, and he pled not guilty due to a mental disease or defect.

¶3 During the year and one-half that followed the charges, Flatoff rotated through numerous appointed attorneys. Of the first five, three withdrew for personal reasons such as retirement or conflict of interest. The others withdrew after Flatoff refused to cooperate with them. After Flatoff's fifth attorney withdrew, the trial court cautioned him that at some point the public defender's office might not be able to find new counsel for him—either because his trial date was too close or because the office might "run out of attorneys." Within weeks of two new attorneys being appointed, however, Flatoff wrote to the court complaining about them. Even though the court strongly urged Flatoff "to keep an open mind regarding the attorneys that have been appointed[,]" Flatoff continued writing the court disparaging those attorneys, and they too moved to withdraw.

¶4 In August 2017, two different public defenders—Ben Szilagyi and Eric Heywood—were appointed, and a previously-scheduled motion hearing and

Flatoff's trial were again adjourned. By the date of the rescheduled motion hearing, Flatoff had become dissatisfied with them as well.

¶5    At a motion hearing in January 2018, Attorney Szilagyi informed the trial court that he, Heywood, and Flatoff had reached "a mutual understanding" that he and Heywood would withdraw and Flatoff would represent himself. Attorney Szilagyi explained that Flatoff was unwilling to agree with any of counsel's strategic decisions:

> [B]ased on our conversations with him, it is clear that he wishes to make the majority, if not the entirety, of the strategic decisions that are the province of an attorney such as witnesses to call, questions to ask the witnesses, opening and closing statements, evidentiary objections, et cetera, and pretrial motions.
>
> And in further discussing that issue with him, it essentially came to the point where he advised us that his desire to do those things was nonnegotiable. And given his desire and our ethical limitations, we reached a -- more or less a mutual understanding that he is asking us to withdraw and to represent himself.

Attorney Heywood further explained that he and Szilagyi had advised Flatoff of his right to request standby counsel.

¶6    At the January 2018 hearing, Flatoff explained that while he did not want to give up his right to counsel, he would "no longer accept any counsel appointments" from the public defender's office. Flatoff said that his attorneys were "incompetent" and "ineffective" because they told him that the issues he wanted to pursue—for example, allegations that evidence had not been properly preserved—would be frivolous and therefore unethical. Flatoff further claimed that many of the public defenders assigned to his case had "deliberately hampered [his] defense."

¶7     After listening to Flatoff's concerns, the trial court clarified that Flatoff would not accept any other appointments from the public defender's office. The court explained, "[I]f you are telling me you will not accept any other appointments from the Public Defender's Office, then you're limited to representing yourself. Do you understand that?" Flatoff responded that he understood. The court again confirmed, "And that's the way you want to proceed?" Flatoff answered, "Yes, Your Honor. I mean, with objection on the record, like I said, for potential future litigation."

¶8     The trial court then confirmed that Flatoff had gone over CR-226, the waiver of right to attorney form, with counsel and confirmed that Flatoff understood the information in the form. The court also confirmed that Flatoff understood that he had a constitutional right to counsel and that if he wanted an attorney, he could ask the Public Defender's Office to appoint someone else. Flatoff said he understood.

¶9     The trial court additionally ensured Flatoff understood that:

• That becoming a lawyer requires extensive training and attorneys often have years of courtroom experience;

• An attorney could represent him, speak on his behalf in trial court, advise him of his legal rights and options, and could explain and assist him in legal and court proceedings; whereas the court could not give him any legal advice, could not weigh his options for him, and neither the court nor the district attorney were his lawyers and were not required to explain the law to him;

• When the trial court made decisions, it would ask for both Flatoff's and the district attorney's input;

• If Flatoff wanted to testify, he would be sworn as a witness and cross-examined by the State; and

• Flatoff was facing very serious charges with a maximum penalty of over 300 years' imprisonment and a substantial fine.

¶10     The trial court also elicited the following information from Flatoff:

• He was 49 years old;

• He could write and understand English, had a GED, had attended three years of college and had earned a 3.87 grade point average;

• He had been self-employed as a licensed tattoo artist;

• He had been studying case law online and through books during the past two years;

• He suffered from PTSD, anxiety, and depression but did not take medication because he had experienced adverse side effects from it;

• His mental health conditions did not impair his ability to understand or communicate with the trial court, and would not, in his opinion, affect his ability to represent himself;

• He did not have any physical or psychological disability that might affect his ability to understand what was happening in trial court or express his opinions;

• He was not currently under the influence of alcohol or any medications;

• No one had made any promises or threats to influence his decision not to obtain another attorney; and

• He was making this choice freely and voluntarily.

¶11    Following this colloquy, the trial court asked Flatoff if he had decided to represent himself or to ask the Public Defender's Office for another attorney, and Flatoff responded that if he had "to choose between the Public Defender's Office and me, I am going to choose me." He said he did not believe anyone from the Public Defender's Office would adequately represent him, and he was prepared to represent himself.

¶12    The trial court determined that Flatoff was voluntarily and freely waiving his right to counsel. It also determined that, based on his education level, the legal research he had been performing, and the discussions with him about his past, Flatoff was competent to represent himself. It granted Attorney Szilagy's and Attorney Heywood's requests to withdraw and allowed Flatoff to represent himself.[1]

¶13    After finding that Flatoff waived his right to counsel, the trial court appointed Attorney Szilagyi and/or Attorney Heywood to serve as standby counsel:

> In this case, we are approximately six, seven weeks out from the jury trial. There are certainly many complicated issues in this case regarding conspiracy charges, regarding possible defense, certainly complicated by the presentation of the numerous witnesses that are at least on the State's witness list, and these attorneys have been on this case for numerous months in anticipation of the jury trial.
>
> The motion to withdraw only came within the last week or so[,] so it's the presumption of this Court that these

---

[1] Although we do not reach the issue in our analysis, we note that the trial court also found that Flatoff forfeited his right to counsel.

attorneys, Mr. Heywood and Mr. Szilagyi, have been reviewing, preparing, and they have met with the defendant so they certainly are or should be prepared to proceed for sure for this motion hearing but to a substantial degree for the jury trial in about six weeks.

So I am going to order that Mr. Heywood and[/]or Mr. Szilagyi does act as standby counsel in this matter. I get you have your administrative code that you need to follow, but this Court has jurisdiction over this case and over you as officers of this court…. [T]his case has just been delayed too many times. We can't do this again, get a new attorney on board and they need time to prepare. So the best way to assist the Court is to use one of these attorneys.

¶14 The State Public Defender's Office moved for reconsideration, but the trial court affirmed its decision. In its order reaffirming the appointment of standby counsel, the court additionally determined that locating private counsel who could clear their schedule, work well with Flatoff—particularly given "his challenging attitude, and at times hostility, towards previous attorneys[,]"—and become well-versed in the case by the start of trial was highly unlikely. The court did, however, amend its order to have only one of the attorneys (Szilagyi *or* Heywood) serve as standby counsel and for that attorney to be compensated by Winnebago County pursuant to WIS. STAT. § 753.19 (2023-24).[2] Attorney Szilagyi thereafter served as standby counsel.

¶15 On March 5, 2018, Flatoff's jury trial began. Flatoff's defense, as explained in his opening statement, was that he went to Eagle Nation Cycles to recover his motorcycle from a man who worked there, and got caught in the middle of an ongoing conflict between the Neenah Police and alleged gang members who frequented the cycle shop. Flatoff also claimed that the evidence

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

was improperly handled or tampered with during the investigation as part of a government conspiracy to cover up that conflict, and that his public defenders aided in the alleged cover-up.

¶16    Over the next three days, the State presented its case. It called approximately 15 witnesses and introduced numerous pieces of evidence, including: the gun Flatoff used, multiple photos of the scene, transcripts/tape of the 9-1-1 calls made relating to the incident, surveillance video from inside Eagle Nation Cycles during the incident, the helmet of the police officer who was shot in the head during the incident, and body camera footage from the police officers.

¶17    After the State rested, Flatoff requested that Attorney Szilagyi, who was still serving as standby counsel, take over the case. Both Attorney Szilagyi and the district attorney voiced concerns about Flatoff's request, including the fact that Flatoff had accused his public defenders of trying to derail his defense. The trial court took counsel's concerns under advisement until the afternoon of the fourth day of trial, when it converted Attorney Szilagyi's appointment from standby counsel to advisory counsel. Attorney Szilagyi continued to represent Flatoff for the remainder of trial.

¶18    The jury returned guilty verdicts on all charges; and the case proceeded to the mental responsibility phase of trial, where the jury found that Flatoff did not have a mental disease or defect at the time of the offense. Flatoff was sentenced,[3] and he now appeals.

---

[3] Flatoff filed a postconviction motion arguing that trial counsel was ineffective, *see* *Strickland v. Washington*, 466 U.S. 668 (1984), but he has abandoned that argument on appeal.

**DISCUSSION**

¶19 Flatoff makes two arguments on appeal. He first argues that the trial court erred in determining that he waived and forfeited his right to counsel.[4] He also argues that the court erred in appointing standby counsel. We discuss each issue in turn.

¶20 "Whether a defendant has knowingly, intelligently and voluntarily waived his right to counsel requires the application of constitutional principles to the facts of the case, which we review independent of the [trial] court." *State v. Klessig*, 211 Wis. 2d 194, 204, 214, 564 N.W.2d 716 (1997). To determine that a defendant is validly waiving the right to counsel, the court must conduct a colloquy ensuring that the defendant: (1) deliberately chose to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charges against him, and (4) was aware of the general range of penalties that could be imposed. *Id.* at 206. If the answer to all the aforementioned questions is "yes," the court must next determine whether the defendant was competent to represent himself. *See id.* at 203, 214. Factors to consider in determining competence "include the defendant's education, literacy, fluency in English, and any physical or psychological disability which may significantly affect his ability to communicate a possible defense to the jury." *See State v. Marquardt*, 2005 WI 157, ¶60, 286 Wis. 2d 204, 705 N.W.2d 878 (citation omitted). Because "persons of average ability and intelligence are

---

[4] Flatoff also argues that the trial court erred in determining that he forfeited his right to counsel. Because we conclude that Flatoff waived his right to counsel, we do not reach the forfeiture issue. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

entitled to represent themselves, a timely and proper request [to proceed pro se] should be denied only where a specific problem or disability can be identified which may prevent a meaningful defense from being offered, should one exist." *See **id.***

¶21 We conclude that Flatoff validly waived his right to counsel. As detailed more fully above, the trial court confirmed and reconfirmed that Flatoff chose to proceed without counsel; indeed, Flatoff not only responded multiple times that he wanted to represent himself and that he read and understood the waiver-of-right-to-attorney form, but also told the court that if he had to "choose between the Public Defender's Office and me, I am going to choose me." The court also ensured Flatoff was aware of the difficulties and disadvantages of self-representation, explaining, among other things, that: becoming a lawyer requires extensive training and attorneys often have years of courtroom experience; the court could not give him any legal advice or weigh his options for him (while defense counsel could help with these things including: speaking on his behalf in court, advising him of legal rights and options, assist in investigating, exploring possible defenses, filing motions on evidentiary issues, assisting in sentencing if Flatoff were convicted, and then filing an appeal if requested); neither the court nor the district attorney were his lawyers; and that if Flatoff wanted to testify, he would be sworn as a witness and cross-examined by the State. Furthermore, the court did not, as Flatoff argues, simply gloss over the seriousness of the charges against him and the range of penalties that could be imposed or "just assume[]" Flatoff was aware of them; rather, the court explained that Flatoff faced "very serious charges[,]" including "attempted homicide, felony murder, and many [additional] counts … and … a maximum penalty of over 300 years as well as a substantial fine."

¶22    We also conclude that Flatoff was competent to represent himself. While Flatoff argues the trial court failed to make this determination, the record, as summarized above, demonstrates that the court considered Flatoff's education, literacy, business experience, and experience researching case law as evidence that he possessed the ability to represent himself. Moreover, the court determined that: Flatoff's mental health challenges did not impair his ability to understand or communicate with the court; he did not have any physical or psychological disability that might affect his ability to understand what was happening in court or express his opinions; and Flatoff was not under the influence of alcohol or any medications and was making his choice freely and voluntarily. We agree with the trial court and conclude that, under these circumstances, Flatoff was competent to represent himself.

¶23    Flatoff next argues that the trial court erred in appointing Attorney Szilagyi, a public defender, as standby counsel. He points to WIS. ADMIN. CODE § PD 5.03 (Nov. 2024),[5] which prohibits public defenders from acting as standby counsel in any case, even in circumstances where the "attorney was originally providing adversary representation in the case." *See* § PD 5.03(2).

¶24    While the administrative code is clear, it is also true that a trial court "has the authority to appoint counsel whenever in the exercise of its discretion it deems such action necessary." *State v. Lehman*, 137 Wis. 2d 65, 76, 403 N.W.2d 438 (1987). This authority is derived "not from the individual's constitutional right to counsel, but rather is inherent to serve the interests of the [trial] court." *State ex rel. Chiarkas v. Skow*, 160 Wis. 2d 123, 137-38, 465 N.W.2d 625 (1991).

---

[5] All references to WIS. ADMIN. CODE § PD are to the November 2024 Register.

Indeed, "[a]ttorneys working for the State Public Defender are not 'exclusive' representatives of the Office of the State Public Defender, they are also officers of the court." *See id.* at 138. Therefore, "[w]hen no other reasonable alternative is available and the [trial] court explicitly states the need to exercise its discretion, [it] may appoint counsel from the State Public Defender's Office" to fulfill a role it typically would be prohibited from taking. *Cf. id.* at 139 (allowing trial court to appoint public defender to represent non-indigent defendant). "[T]he responsibility for payment in such cases rests with the county." *Id.* at 140.

¶25 We conclude that the trial court in Flatoff's case did not erroneously exercise its discretion in appointing Attorney Szilagyi as standby counsel. As the court fully explained, the circumstances were highly unusual: not only were there numerous criminal charges—including felony murder based on the police shooting a bystander during the hostage incident—but there also was a long witness list and trial had already been delayed many times due to Flatoff's inability to get along with numerous attorneys. Moreover, Attorney Szilagyi already had been preparing for trial and had a better relationship with Flatoff than other attorneys did. The court further provided that Winnebago County would pay Attorney Szilagyi for his services, made clear that "the attorneys are at the service of the court, not Mr. Flatoff[,]" and advised that standby counsel's duties were to explain processes and procedure to Flatoff. Given the complexity of the case, the short amount of time before trial was to begin, Flatoff's relatively communicative relationship with Attorney Szilagyi, and his history of repeatedly refusing to work with other counsel, the court did not err in appointing Attorney Szilagyi to serve as standby counsel on the county's behalf.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* W<small>IS.</small> S<small>TAT.</small> R<small>ULE</small> 809.23(1)(b)5.