STATE of Wisconsin EX REL. Joachim E. DRESSLER, Petitioner,

MITCHELL, BAXTER & ZIEGER, S.C., Co-Petitioner,†

v.

CIRCUIT COURT FOR RACINE COUNTY, Branch 1, the Honorable Gerald P. Ptacek, Presiding, and State of Wisconsin, Respondents.

Court of Appeals

*No. 91-0898-W. Oral argument May 20, 1991.—Decided June 4, 1991.*

(Also reported in 472 N.W.2d 532.)

†Petition to review denied.

624

On behalf of the petitioner, there was a petition for supervisory writ and oral argument by *Terry E. Mitchell, James J. Mathie,* and *Paul N. Brandau* of *Mitchell, Baxter & Zieger, S.C.* of Milwaukee. Oral argument by *James J. Mathie.*

On behalf of respondents, there was a response to petition for supervisory writ and oral argument by *James E. Doyle,* attorney general and *James H. McDermott,* assistant attorney general. Oral argument by *James H. McDermott.*

An *amicus curiae* brief of the state public defender was submitted by *Kenneth P. Casey,* chief, appellate division.

An *amicus curiae* brief was submitted by *LeRoy Kramer, III,* deputy corporation counsel.

Before Nettesheim, P.J., Brown and Anderson, JJ.

ANDERSON, J. Joachim E. Dressler and Mitchell, Baxter & Zieger, S.C. petition this court, under Rule 809.51, Stats., for a supervisory writ requiring the circuit court to: (1) provide for payment of Dressler's attorney's fees at the rate established in SCR 81.02 (West 1990); (2) provide funds to retain expert witnesses to assist in Dressler's defense; and, (3) prohibit the Honorable Gerald P. Ptacek from continuing to preside over *State of Wisconsin v. Joachim E. Dressler* (Racine County Circuit Ct. No. 90–CF–584). We conclude that all three requests involve the circuit court's discretionary duties and we deny the issuance of the writ.[1]

Dressler is charged with one count of first-degree intentional homicide in violation of sec. 940.01(1), Stats. Shortly after the Racine County Sheriff's Department completed a search of his residence, Dressler contacted the law firm of Mitchell, Baxter & Zieger, S.C. (the Mitchell firm) for representation. Dressler and his wife entered into a written fee arrangement with the Mitchell firm and executed a $50,000 mortgage on their homestead to secure the payment of anticipated future legal

---

[1]The petition filed with this court raised several issues of state-wide importance; therefore, we invited the State Public Defender to file an *amicus* brief and granted the motion of Racine County to file an *amicus* brief. In addition, oral arguments were conducted on the petition on May 20, 1991 pursuant to Wis. Ct. App. IOP VI–(10) (West 1990).

fees.[2] Approximately ten days after Dressler secured legal representation, he was arrested and formally charged.

Between the date of Dressler's initial contact with the Mitchell firm on July 31, 1990 and February 28, 1991, fees and expenses generated by the Mitchell firm totaled $53,256.90.[3] Dressler paid a $9,950 retainer and approximately $30,000 was realized from the sale of the Dressler homestead, leaving a balance due the law firm of $13,306.09.

Four days before trial, as a result of Dressler's inability to pay the Mitchell firm, the firm made a motion seeking the alternative relief of the appointment of the law firm with compensation according to SCR 81.02 or an order allowing the firm to withdraw. The trial court heard the motion on March 7, 1991. In addition, Dressler filed a motion seeking an order providing for the payment of expert witness fees. The trial court denied any relief to Dressler and the Mitchell firm and ordered that trial proceed as scheduled on March 11, 1991.

The Mitchell firm renewed these motions on March 11, 1991 after the trial was adjourned upon the Mitchell firm's representations that it did not have any funds to retain expert witnesses. The trial court again denied any relief to Dressler and the Mitchell firm. The trial is presently scheduled for July 15, 1991.

---

[2]Co-petitioners have failed to provide us with copies of the written fee agreement and mortgage.

[3]This amount includes out-of-pocket expenses and legal fees that the Mitchell firm billed at $100 per hour for Attorney Terry E. Mitchell, $75 per hour for two associates and $40 per hour for a paralegal assistant. The total legal fees incurred by Dressler have been discounted twenty percent by the Mitchell firm.

A supervisory writ is a blending of the writ of mandamus and the writ of prohibition. *See State ex rel. Oman v. Hunkins,* 120 Wis. 2d 86, 87, 91, 352 N.W.2d 220, 221, 223 (Ct. App. 1984). Whether or not to issue a supervisory writ requires us as the court of original jurisdiction to exercise our discretion. *See Cartwright v. Sharpe,* 40 Wis. 2d 494, 503, 162 N.W.2d 5, 9 (1968); sec. 752.01(2), Stats. The issuance of a writ is controlled by equitable principles and, in our discretion, we can consider the rights of the public and third parties. *Id.*

The petition for a writ of supervision is not a substitute for an appeal. Because the petition invokes our supervisory authority, the writ is considered an extraordinary and drastic remedy that is to be issued only upon some grievous exigency. *Id.; State ex rel. Beaudry v. Panosian,* 35 Wis. 2d 418, 426, 151 N.W.2d 48, 52 (1967). The petition for a supervisory writ will not be issued unless: (1) an appeal is an utterly inadequate remedy; (2) the duty of the circuit court is *plain;* (3) its refusal to act within the line of such duty or its intent to act in violation of such duty is *clear;* (4) the results of the circuit court's action must not only be prejudicial but must involve extraordinary hardship; and, (5) the request for relief was made promptly and speedily. *Id.* at 426, 151 N.W.2d at 52.

## I. APPOINTMENT AND COMPENSATION OF COUNSEL

The Mitchell firm initially sought permission of the trial court to withdraw as counsel of record because of the outstanding balance due for legal fees and expenses that Dressler could not pay. The firm based its request to

withdraw on SCR 20:1.16(b)(5) (West 1990) which gives a lawyer the option to withdraw if "the representation will result in an unreasonable financial burden on the lawyer . . .."[4] The Mitchell firm argued that an unreasonable financial burden is created by the $13,306.09 balance of fees and expenses, and the burden will be exacerbated if it is required to proceed to trial without any chance of being paid.

The Mitchell firm renews these arguments before us along two lines. First, it argues that the trial court's order denying the firm's motion to withdraw is an abuse of discretion and tantamount to the court's appointment of the firm as counsel of record entitling it to compensation at the rate established in SCR 81.02. Second, the Mitchell firm argues that the trial court's refusal to order compensation from Racine County amounts to the unconstitutional taking of private property for public use and involuntary servitude.

The "Rules of Professional Conduct for Attorneys," SCR ch. 20 (West 1990), envisions that nonpayment of agreed upon legal fees is an *optional* grounds for withdrawal, granting the attorney discretion in deciding whether or not to bring the motion.[5] Second, the rules

---

[4]The informational comments printed with SCR 20:1.16 (West 1990) state that this provision explicitly affords a lawyer the option to withdraw if a client fails to comply with a written fee agreement, but only if withdrawal can be accomplished without material, adverse impact on the client's interest.

[5] **SCR 20:1.16 Declining or Terminating Representation.**

. . ..

**(b)** Except as stated in paragraph (c), a lawyer *may* withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:

. . ..

631

foresee the exercise of judicial discretion by requiring counsel to continue representation if ordered to do so:

> When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

SCR 20:1.16(c) (West 1990).

The motion of retained counsel to withdraw is directed to the sound discretion of the trial court, *see Sherman v. Heiser,* 85 Wis. 2d 246, 255–56, 270 N.W.2d 397, 401 (1978), just as is the motion of an indigent defendant to replace appointed counsel, *State v. Haynes,* 118 Wis. 2d 21, 27, 345 N.W.2d 892, 896 (Ct. App. 1984).[6] Dressler and the Mitchell firm cannot seek review of a discretionary act by a supervisory writ. *Oman,* 120 Wis. 2d at 88, 352 N.W.2d at 221. The trial court does not have a plain duty to grant a motion to withdraw; therefore, it is not subject to our superintending control.

We now consider whether, after the exercise of discretion in denying the Mitchell firm's motion to withdraw, the trial court incurred a plain duty to appoint the firm and set compensation pursuant to SCR 81.02.

The Mitchell firm's principal argument is that the trial court has a plain duty to provide compensated counsel to indigent criminal defendants. They observe

---

(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client . . .. [Emphasis added.]

[6]Some of the factors the trial court may consider in the exercise of its discretion include: the complexity of the case; preparatory work completed; whether the request is made to manipulate the criminal justice system; and the amount of fees paid, if any.

that after paying the firm more than $40,000, Dressler is now indigent. Thus, the firm reasons that by denying the motion to withdraw, the trial court effectively appointed it as counsel for Dressler pursuant to SCR 81.02.

A trial court has a plain duty to appoint counsel for an indigent defendant in a criminal proceeding. *See State v. Scarbrough*, 55 Wis. 2d 181, 186, 197 N.W.2d 790, 792 (1972). Likewise, the trial court has the inherent authority to appoint counsel when the court, in the exercise of its discretion, determines it is necessary for the efficient operation of the court.[7] *See Douglas County v. Edwards*, 137 Wis. 2d 65, 76–78, 403 N.W.2d 438, 443–44 (1987). Where the service of counsel is indispensable to the efficient operation of the court, and the appointment of counsel is not for the benefit of the individual, the county of venue can be required to pay the compensation set by the court. *State ex rel. Chiarkas v. Skow*, 160 Wis. 2d 123, 141, 465 N.W.2d 625, 631–32 (1991).

From these axioms the Mitchell firm proposes that the trial court has a clear legal duty to appoint the firm as Dressler's counsel and to order Racine County to pay its legal fees at a rate to be established pursuant to SCR 81.02. We reject this logic because it ignores judicial discretion and the existence and purpose of the State Public Defender (SPD).

Other than the constitutional obligation to appoint counsel for the benefit of indigent defendants, these axioms contemplate the exercise of judicial discretion.

---

[7] "This inherent authority is derived not from the individual's constitutional right to counsel, but rather is inherent to serve the interests of the circuit court." *State ex rel. Chiarkas v. Skow*, 160 Wis. 2d 123, 137–38, 465 N.W.2d 625, 630 (1991).

*Edwards* and *Skow* reaffirm the general proposition that, in appointing counsel and setting compensation, the trial court *must* exercise its discretion. *See also County of Door v. Hayes-Brook,* 153 Wis. 2d 1, 13, 449 N.W.2d 601, 606 (1990).

The Mitchell firm also overlooks the legislative intent in establishing the SPD office: "to structure a comprehensive state-wide program to deal with the appointment of counsel for indigent defendants." *Edwards,* 137 Wis. 2d at 76–77, 403 N.W.2d at 444. Although the SPD is not the exclusive source of counsel for indigent defendants, *see id.,* it is a "safety net" that is available to provide counsel to qualifying individuals.

Only after the SPD has declined to act and it is not involved in the criminal proceedings can the trial court properly exercise its discretion. *See id.* at 85, 403 N.W.2d at 447. The SPD has not declined to act in this case; in fact, in its *amicus* brief, the SPD, without making any promises, has set forth a procedure that could lead to the appointment of the Mitchell firm as counsel for Dressler. The SPD is available to Dressler as a "safety net." Thus, there is an adequate remedy available other than a supervisory writ. *See Beaudry,* 35 Wis. 2d at 426, 151 N.W.2d at 52.

Before the trial court, the Mitchell firm declined to seek appointment by the SPD because of the firm's belief that it would be required to recompute the fees it had earned, before appointment, at the SPD's lower hourly rate. However, Wis. Adm. Code sec. **SPD 4.025(3)** allows the SPD to use an hourly rate greater than the one authorized by statute if certain factors are met. At oral argument the Mitchell firm again declined the SPD appointment option, stating that it did not want an appointment at the statutorily mandated hourly

fees paid by the SPD, preferring the higher fees authorized by SCR 81.02.

The gist of the Mitchell firm's argument is that because continued representation of Dressler is an unreasonable financial burden on the firm and the SPD's statutorily mandated compensation rate is also unreasonable, the trial court now has a plain duty to order that the firm be compensated at the rate established in SCR 81.02.[8] We conclude that this argument is without merit. The trial court does not have a plain legal duty just because counsel is not satisfied with the statutorily mandated hourly fees paid by the SPD.

The Mitchell firm's propositions that the trial court's actions constitute either a taking of property or involuntary servitude are not developed beyond the assertion of the propositions.[9] The Mitchell firm's argument rings hollow because Dressler has already paid the firm more than $40,000 for legal fees and expenses.

---

[8]The Mitchell firm has argued that by denying the firm permission to withdraw, the court effectively appointed the firm under SCR 81.02 (West 1990). This argument ignores the fact that an order is a written direction of a court determining an issue raised by the application for the order. The order expresses the court's decision on the issue before it. An order denying one form of requested relief does not, *sub silentio,* grant the alternative relief requested. In this case the trial court made it perfectly clear at the March 11, 1991 motion hearing that it had not appointed the Mitchell firm; it flies in the face of logic to hold that the court did otherwise.

[9]The apparent thrust of this argument is that requiring the Mitchell firm to serve without compensation is violative of one or more provisions of the Wisconsin and federal constitutions and the trial court has a plain duty not to act outside of the constitutions; therefore, the trial court has a plain duty to order reasonable compensation to the firm.

Although we conclude that this argument is specious, we will comment upon it in an effort to put the argument and its underlying propositions to rest in Wisconsin.

The Mitchell firm's argument that its service without compensation is an unconstitutional taking of private property has been uniformly rejected by other courts:

> An applicant for admission to practice law may justly be deemed to be aware of the traditions of the profession which he is joining, and to know that one of these traditions is that a lawyer is an officer of the court obligated to represent indigents for little or no compensation upon court order. Thus, the lawyer has consented to, and assumed, this obligation and when he is called upon to fulfill it, he cannot contend that it is a "taking of his services."

*United States v. Dillon,* 346 F.2d 633, 635 (9th Cir. 1965), *cert. denied,* 382 U.S. 978 (1966).

Likewise, the proposition that the appointment of counsel to serve without compensation constitutes involuntary servitude has been rejected out-of-hand by other jurisdictions:

> The thirteenth amendment['s prohibition against involuntary servitude] has never been applied to forbid compulsion of traditional modes of public service even when only a limited segment of the population is so compelled.

*Williamson v. Vardeman,* 674 F.2d 1211, 1214 (8th Cir. 1982).[10]

---

[10] *Williamson v. Vardeman,* 674 F.2d 1211 (8th Cir. 1982), collects reported decisions from other jurisdictions that discuss both parts of the Mitchell firm's argument. A review of those

We are satisfied that the underpinnings of these decisions are sound:

> [W]hen a lawyer takes his license he takes it burdened with certain honorary obligations. He is a sworn minister of justice, and when commanded by the court he cannot withhold his services in cases prosecuted in forma pauperis.

*Id., quoting State ex rel. Gentry v. Becker,* 174 S.W.2d 181 (Mo. 1943). They are also supported by Wisconsin tradition:

> [L]awyers will remember that they are officers of the court, bearing a commission from the state; that they are admitted to the ranks of the bar not only that they may practice their profession on behalf of those who can pay well for their services but that they may assist the courts in the administration of justice. Every public-spirited, right-minded citizen recognizes that he [or she] must work at times for the good of the public without reward or hope of reward. In the defense of indigent persons the good lawyer finds his [or her] opportunity to do this kind of labor, and he [or she] should do it cheerfully, taking the small fee given by the law, without complaint, and remembering that his [or her] best reward is the sense of public duty faithfully performed.

*Green Lake County v. Waupaca County,* 113 Wis. 425, 436, 89 N.W. 549, 552 (1902). Therefore, we hold that in Wisconsin the appointment of counsel to represent the indigent at a reduced level of compensation does not constitute a taking of property or involuntary

---

decisions leads us to conclude that a vast majority of states have refused to hold that compelled *pro bono* services are either a taking of property or involuntary servitude.

servitude.[11]

## II. COMPENSATION OF EXPERT WITNESSES

Dressler also petitions this court to exercise its supervisory power to compel the trial court to provide funds to retain expert witnesses that he and the Mitchell firm believe are required for his defense. Here again Dressler and the Mitchell firm take the position that the trial court has a clear legal duty to order payment of any and all expert witness fees.

An indigent defendant does have a constitutional right to have the assistance of the trial court to compel the attendance of witnesses:

> [A]t a minimum . . . criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt. Few rights are more fundamental than that of an accused to present witnesses in his own defense. Indeed, this right is an essential attribute of the adversary system itself.

*Taylor v. Illinois,* 484 U.S. 400, 408 (1988) (citations omitted).

---

[11]As we have previously noted the "Rules of Professional Conduct for Attorneys" impose an ethical obligation upon counsel to continue representation of a client if ordered to do so by the court, even if it creates an unreasonable financial burden. We conclude that such an ethical obligation also removes any doubt about whether the trial court's order was the taking of property without just compensation or the pressing of the Mitchell firm into involuntary servitude.

■■■■■ However, this is not an unfettered right that requires the trial court to give an indigent defendant unlimited access to blank checks to hire all expert witnesses that he or she desires.

> [T]he Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him "compulsory process for obtaining *witnesses in his favor.*"

*United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982) (emphasis in original). In order to secure the assistance of the trial court, the defendant is required to make some plausible showing of how the proposed expert witnesses will be both material and favorable to his or her defense. *Id.*

Wisconsin has a statutory process that is available to indigent defendants to assist them in procuring essential witnesses:

> Upon satisfactory proof of the financial inability of the . . . defendant to procure the attendance of witnesses for his or her defense, the judge . . . in any . . . criminal action or proceeding . . . to be tried or heard before him or her, *may direct* the witnesses to be subpoenaed as he or she *determines is proper and necessary,* upon the . . . defendant's oath or affidavit or that of the . . . defendant's attorney. Witnesses so subpoenaed shall be paid their fees in the manner that witnesses for the state therein are paid. Determination of indigency, in full or in part, under s. 977.07 is proof of the . . . defendant's financial inability to procure the attendance of witnesses for his or her defense.

Section 885.10, Stats. (emphasis added).

639

We conclude that the federal and state constitutions and the statute do not create a clear legal duty that mandates the trial court to provide witness funds for indigent defendants upon a general request. Rather, what is contemplated is a discretionary decision by the court. The court will only be able to make that decision after the defendant has made a plausible showing that the proposed witnesses are both material and favorable to his or her defense, *i.e.*, necessary.

We will not invoke our supervisory control over the trial court to compel a discretionary act. *See Oman,* 120 Wis. 2d at 88, 352 N.W.2d at 221. We also observe that a supervisory writ will not issue if there are other adequate and complete remedies available to the petitioner. *See Beaudry,* 35 Wis. 2d at 426, 151 N.W.2d at 52. One available remedy is the SPD "safety net." Wis. Adm. Code sec. **SPD 2.12** contains a procedure for the appointment and compensation of expert witnesses. The procedure is available to any qualifying defendant. The Mitchell firm's expressed reluctance to accept appointment by the SPD does not negate the availability of this acceptable and adequate remedy.

Thus, we conclude that the remedy is for the defendant to make a showing of particularized need to the trial court.[12] *See Taylor,* 484 U.S. at 414-15; *Valenzuela-*

---

[12]At this time there is no formalized process for a defendant to make a showing of particularized need for expert witnesses. We would recommend that such a process take this form:

(1) Defendant shall make an *ex parte* application to the trial court for expert assistance, *see* 18 U.S.C. 3006A(e)(1);

(2) The application is reviewed *in camera* and sealed until resolution of the pending charges, *see Pennsylvania v. Ritchie,* 480 U.S. 39, 60 (1987);

*Bernal,* 458 U.S. at 867; sec. 885.10, Stats.

In this case, no showing of particularized need was ever made. When Dressler and the Mitchell firm made application to the trial court for funds to retain expert witnesses, only a general motion with conclusory affidavits was submitted. This general material was insufficient to invoke the court's decisional process.

In summary, we conclude that the trial court does not have an unequivocal duty to provide funds to a defendant for expert witnesses. Instead, the court has, upon a showing of a particularized need, the discretion to provide such assistance to a defendant. The Mitchell firm and Dressler failed to make this necessary showing.

### III. REMOVAL OF TRIAL JUDGE

Dressler and the Mitchell firm also petition this court for a supervisory writ to prohibit Judge Ptacek

(3) The application contain a sufficiently plausible explanation showing:

> (a) The requested expert will assist the defendant in the preparation of his or her defense, *see United States v. Verkuilen,* 690 F.2d 648, 659 (7th Cir. 1982);

> (b) The materiality of the expert—material evidence is that evidence which necessarily enters into the consideration of the controversy, and which by itself or in connection with other evidence is determinative of the case, *see State v. McLaughlin,* 514 A.2d 1139, 1141 (Del. 1986);

> (c) The expert is not cumulative to other readily available witnesses, *id.* at 1140-42; and,

> (d) The expert is favorable to the defense. *Id.*

This suggested procedure is very similar to the procedure developed by the SPD for requests for expert assistance. *See* "Private Bar Request for Approval to Hire Expert or Investigator," State Public Defender Form (March 1991).

from presiding over the trial. At the March 7, 1991 hearing, Judge Ptacek denied the Mitchell firm's motion for expert witness fees and withdrawal. During the course of the hearing, the judge stated:

> Being somewhat of a realist, I have to live here in Racine County. I work with the powers-that-be in government, and I know very well what my reaction is to ordering the County to pay Mr. Dressler's expenses, and I don't think it's a burden that the people of Racine County should have to bear.

On March 11, 1991, Dressler and the Mitchell firm moved that Judge Ptacek disqualify himself pursuant to sec. 757.19(2)(f) and (g), Stats., and SCR 60.01 (West 1990). In their petition, they argue that the judge's statement "evidences a significant personal interest in the outcome of this matter." They state further that "[t]he judge's statement boldly demonstrates that he cannot act impartially in this action."[13] Section 757.19(2)(f) and (g) provides that:

> Any judge *shall* disqualify himself or herself from any . . . criminal action or proceeding . . .:
>
> . . . ..

---

[13]In Dressler's and the Mitchell firm's petition, they intimate that one reason the judge made the rulings that he did was to accommodate the trial court's own schedule. The trial court has inherent power, exercisable in its sound discretion, to control its docket with economy of time and effort. *Rupert v. Home Mut. Ins. Co.,* 138 Wis. 2d 1, 7, 405 N.W.2d 661, 663 (Ct. App. 1987). Furthermore, courts cannot allow litigants to control judicial calendars. *Sherman v. Heiser,* 85 Wis. 2d 246, 254, 270 N.W.2d 397, 401 (1978). Thus, even if it was clear that Judge Ptacek's motivation in deciding these motions was a concern for the trial court's schedule and this discretion was not abused, we conclude that such a reason would be a proper concern of the trial court.

(f) When a judge has a significant financial or personal interest in the outcome of the matter. Such interest does not occur solely by the judge being a member of a political or taxing body that is a party.

(g) When a judge determines that, for any reason, he or she cannot, or it appears he or she cannot, act in an impartial manner. [Emphasis added.]

■■■■■■■

The standard for disqualification under sec. 757.19(2)(f), Stats., is objectively measurable. *State v. American T.V. & Appliance of Madison, Inc.,* 151 Wis. 2d 175, 186, 443 N.W.2d 662, 666 (1989). It must be established by evidence and reasonable inferences that the judge does have a financial or personal interest. Other than this snippet from the record, we are presented with no evidence that Judge Ptacek has any interest, other than the interest of a presiding judge, in the outcome of this case.

■■■■■■■

Under sec. 757.19(2)(g), Stats., the reason for a judge's disqualification is subjective. *American T.V.,* 151 Wis. 2d at 186, 443 N.W.2d at 666. This subjective standard requires us to analyze the judge's comments. When viewed out of context, the trial judge's remarks could be interpreted as a refusal to exercise discretion in order to avoid angering the Racine County Board of Supervisors and the county's taxpayers. The trial court's refusal to exercise discretion could be an abuse of discretion. *Barstad v. Frazier,* 118 Wis. 2d 549, 554, 348 N.W.2d 479, 482 (1984). The decision of whether or not to provide funding for expert witnesses for a defendant must, of course, be grounded on the factors we have previously discussed and not on the ramifications of a decision that a political body's treasury should be liable for the expenses.

██

However, when the trial judge's remarks are considered *in toto* and in the context of the March 7, 1991 motion hearing, we see an appropriate exercise of discretion. The court was doing no more than commenting that the taxpayers should not have to bear the costs of Dressler's defense because Attorney Mitchell had a written fee agreement with Dressler; had received approximately $40,000; and had failed to allocate any of these funds to pay for expert witnesses.

When the comment of the judge is considered in context we conclude that it does not exhibit any bias or a refusal to exercise discretion. It is nothing more than part of the mental process in which the court attempts to lay out its response to a future event—the filing of a motion to pay expert witness fees.

██

We note that not all comments made by a judge during the course of the proceedings are grounds for disqualification. A trial judge may express his or her opinion about counsel's motions without being subject to recusal. *See State v. Asfoor,* 75 Wis. 2d 411, 435–36, 249 N.W.2d 529, 540 (1977) (judge's opinion that jury would find defendant guilty, when read in context, shows there was no partiality). *See also Western Bank of Scotland v. Tallman,* 15 Wis. 101 (*92), 104 (*94–95) (1862) (forming an opinion on the legal question is not a basis for prejudice).

In conclusion, Dressler and the Mitchell firm seek a supervisory writ to order Judge Ptacek to act in areas which are plainly within his discretionary province. Therefore, we deny the petition for a supervisory writ.

*By the Court.*—Writ denied.