STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert FLORES, Defendant-Appellant.

Court of Appeals

*No. 91–1040–CR. Oral argument June 8, 1992.—Decided July 29, 1992.*

(Also reported in 488 N.W.2d 116.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert Flores, pro se.* There was a reply brief submitted by *Matthew H. Huppertz* of *Carlson & Huppertz, S.C.,* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *James M. Freimuth,* assistant attorney general.

An *amicus curiae* brief of the state public defender was submitted by *Kenneth P. Casey,* chief, appellate division.

Before Nettesheim, P.J., Brown and Snyder, JJ.

BROWN, J.   Robert Flores appeals a judgment of April 10, 1991, denying his ineffective assistance of appellate counsel claim. At the hearing relating to the judgment, Flores asserted that his counsel withdrew from representing him without his knowledge or consent before the notice of appeal was filed. He claims that, for

this reason, there was no timely appeal. The trial court held that Flores had not met his burden of proof regarding this assertion. We hold that the record is inadequate to determine whether Flores knowingly and intelligently abandoned his postconviction remedies. Normally, we would reverse and remand for another hearing. However, our supreme court recently ruled that ineffective assistance of *appellate* counsel claims are within the province of the court of appeals.[2] We therefore vacate the trial court's judgment.

Following a no contest plea, Flores was convicted of attempted first-degree murder while armed with a dangerous weapon. After sentencing, he filed a *pro se* "Motion for Post-Conviction Relief pursuant to sec. 974.06, Stats." In part, he alleged that he was denied effective assistance of appellate counsel, preventing him from timely pursuing a direct appeal. Other allegations in the motion eventually were resolved by this court in *State v. Flores,* 158 Wis. 2d 636, 462 N.W.2d 899 (Ct. App. 1990). However, we remanded the ineffective assistance of counsel claim to the trial court for what is known as a *Machner* hearing[3] because that court did not address the issue in its original order.

On remand to the trial court, Flores requested that counsel be appointed to represent him at the *Machner* hearing. The trial court referred the request to the Office of the State Public Defender. That office declined to appoint counsel, explaining that "there is little or no merit" to defendant's claim of ineffective assistance of appellate counsel. The trial court accepted the public defender's opinion that counsel was unnecessary and

[2] *State v. Knight,* 168 Wis. 2d 509, 484 N.W.2d 540 (1992).

[3] *State v. Machner,* 92 Wis. 2d 797, 804, 285 N.W.2d 905, 908 (Ct. App. 1979).

held that Flores had to proceed *pro se* at the *Machner* hearing.

The trial court took testimony at the *Machner* hearing. The evidence established that, following his conviction, Flores filed a Notice of Intent to Pursue Postconviction Relief and requested appointment of appellate counsel. An assistant state public defender was appointed. She met once with the defendant.

It is unclear from the *Machner* hearing testimony as to what happened during the meeting between Flores and appointed counsel. Flores testified that his attorney told him "point blank" that there was no "arguable merit" to an appeal and that she wanted to "withdraw."

Appointed counsel testified that she had no recollection of Flores saying he wanted to abandon or waive his right to appeal. She admitted that she had no tape recordings or writings memorializing the conversation. She did, however, make the following statement:

> It is my understanding that the law requires that I may not withdraw from a case without my client's consent. However, it is not my practice to have my client sign a formal waiver. I usually go based on our conversation and the notes that I make of that conversation.

On cross-examination, appointed counsel was asked whether she had found any grounds to appeal as a result of her evaluation of Flores' case. She explained that the question required her to reveal what Flores may have said to her, implicating the lawyer-client privilege which Flores would have to waive before she could answer.

The trial court then explained to Flores what the privilege entailed and that he was free to assert the privilege or waive it and let defense counsel answer. Flores asserted the privilege, and the district attorney aban-

doned all further inquiry into communications between Flores and his appointed counsel. The trial court eventually held that Flores had failed to meet his burden and this appeal ensued.

The first issue is whether Flores should have been afforded counsel at his *Machner* hearing. The state public defender now concedes that it abused its discretion in declining to appoint counsel for Flores regarding this hearing. The abuse of discretion was based upon an erroneous view of the law. The state public defender offered to appoint counsel in this pending appeal. This court accepted the offer and counsel was appointed. While the state gave reasons in its brief for its belief that Flores waived review of his request for a lawyer to represent him at the *Machner* hearing, it agreed that Flores "probably should have been given counsel to litigate this claim, and it does not oppose remand for a new evidentiary hearing." Based upon the statements of the state public defender and the attorney general, we determine that a new *Machner* hearing is necessary because Flores should have had counsel to represent him.

There is a second reason a new *Machner* hearing is in order. Flores, through his new appellate counsel, argues that the trial court erred by permitting Flores to bar the testimony of his previous appellate lawyer on grounds of lawyer-client privilege. *See* sec. 905.03, Stats. The public defender, as *amicus curiae,* and the state agree that the trial court erred. Further, the state said at oral argument that it had no objection to another evidentiary hearing in light of this error.

We agree with the parties that it was error to bar the testimony on grounds of the lawyer-client privilege. We hold that when a defendant charges that his or her

attorney has been ineffective, the defendant's lawyer-client privilege is waived to the extent that counsel must answer questions relevant to the charge of ineffective assistance. Section 905.03(4)(c), Stats., specifically states that there is no lawyer-client privilege "[a]s to a communication relevant to an issue of breach of duty by the lawyer to his [or her] client or by the client to his [or her] lawyer." This section pertains here. *See* I ABA *Standards for Criminal Justice,* Standard 4–8.6 at 4–117 (2d ed. Supp. 1986) ("by raising the issue, the client draws the true facts into controversy and waives the privilege"). Because a full record was not made due to this error, and because this error prejudiced not only the defendant in attempting to meet his burden, but also the state in eliciting relevant testimony, a new hearing is appropriate.

Normally, we would reverse and remand to the trial court with directions consistent with this opinion. However, our supreme court recently has declared in *State v. Knight,* 168 Wis. 2d 509, 484 N.W.2d 540 (1992), that sec. 974.06, Stats., is not the appropriate vehicle for relief for a criminal defendant who asserts that his or her appellate counsel provided ineffective assistance. *Knight,* 168 Wis. 2d at 512. The supreme court ruled that the correct procedural vehicle is for the defendant to petition for a writ of habeas corpus to the "court that considered the appeal." *Id.*

While we recognize that this appellate court did not "consider the appeal" because there was no appeal, we nonetheless adopt the procedural framework of *Knight* for this case in the interest of institutional uniformity. The state indicated at oral argument that it would not object if we construed Flores' sec. 974.06, Stats., motion

as a writ of habeas corpus to this court. We do so. Pursuant to *Knight,* we will appoint a referee by separate order to preside at a *Machner* hearing.

One major issue, raised by the state, is left to be covered. It is whether this court should adopt a prophylactic rule for all appellate lawyers who are informed by their clients, prior to the deadline for direct appeal, that the client no longer wants to appeal. The state suggests that counsel be required to file a waiver form prior to the deadline for appeal. This waiver form, signed by the defendant, would indicate that the defendant has discussed the merits of the appeal with counsel, no longer wants to pursue a direct appeal, does not request a no merit review, and is relieving counsel of all further responsibility in the appeal. The state explains that it is not proffering this as a requirement of the right to effective assistance of appellate counsel, but as a "consideration for subsequent rulemaking by the appropriate rulemaker."

Presumably, the court, and most probably the appellate court, would then note its approval. The alternative to filing the waiver form would require either litigation or a no merit report by the appointed lawyer.

The state public defender and Flores' newly appointed appellate counsel oppose the suggested rule. The state public defender first observes that clients are given an information form as soon as appointments are made under Rule 809.30, Stats. This information sheet provides each client with an explanation of the right to a no merit report. Thus, the client already is informed of his or her right to a no merit when told by counsel that an appeal would be groundless. To require a form giving clients information about their right to a no merit report would be duplicative.

Second, the state public defender opines that, all too frequently, a client suspicious of appointed lawyers may agree to drop a frivolous appeal, but balk at signing a formal release ("I'm not signing anything."). The state public defender notes that in 1991, out of 978 cases, sixty-five percent were closed without court action. One percent were closed after no merit reports. The state public defender believes that the suggested rule may unnecessarily increase the number of no merits filed.

Third, the public defender argues that, as a practical matter, the new rule would create more problems than it would solve. Convictions arising from plea bargains often result in limited exposure to prison time in return for a guilty plea. When a defendant obtains this benefit, a reversal of the conviction often revives all of the original charges. Exposure to increased sentences upon reconviction is a very real concern. Defendants who are counseled about this risk often agree—knowingly and intelligently—to abandon any challenge to their conviction even though there may be arguable grounds for reversal.

The public defender claims, however, that many of these defendants will not sign a waiver because they want to pursue a motion for sentence reduction. If there are no grounds for sentence reduction, the proposed rule would put the appointed attorney in the following dilemma. The attorney ethically cannot follow the defendant's wishes to bring a motion for sentence reduction because the motion would be frivolous. The attorney cannot appeal the conviction because the client has instructed the attorney not to appeal. The attorney cannot file a no merit report because there are meritorious arguments for reversal of the conviction. Yet, the attorney cannot get the defendant's signed waiver in order to comply with the new rule. The public defender thus

argues that the proposed waiver form would satisfy nothing, and the better procedure is for the attorney to privately memorialize the decision made between counsel and client not to pursue postconviction relief. The attorney then can terminate the lawyer-client relationship without court involvement.

In deciding whether to adopt the state's suggested rule, we look to the procedural posture following conviction. Following conviction, a defendant must be informed of his or her appellate rights. The defendant is told, among other things, that if he or she wishes to pursue an appeal, a Notice of Intent to Pursue Postconviction Relief must be filed in the trial court or a Notice of Appeal must be filed directly with this court. In some cases, an attorney does this for a defendant. In other cases, this action is taken by the defendant.

A Notice of Intent to Pursue Postconviction Relief is a statutorily recognized notice setting in motion the machinery and time limits relative to the postconviction/appellate process. *See* Rule 809.30, Stats. However, the notice is *not* filed with the court of appeals. Nor are we provided with a copy. Therefore, we have no knowledge that a defendant wants to pursue postconviction relief.

The only circumstances under which we receive such knowledge is if the state or defense should move for an extension of any of the applicable time limits under the statute. Consequently, the trial court is done with the case. As we read the supreme court's decision in *Knight,* appeals and appellate processes are for the appellate court.

■

The reason for this discussion is to point out the very real administrative problems in requiring court involvement after the Notice of Intent to Pursue Post-

281

conviction Relief and before the actual appeal process has begun in this court. Taking the arguments of the public defender into account, and adding to that the lack of institutional involvement by the court of appeals during this interim period, we conclude that the administrative cost of requiring an additional layer of appellate record overcomes any benefit of court involvement. We decline to adopt the rule suggested by the state.

As a result, we suggest that an appellate attorney proceed as follows. When counsel and client meet after the Notice of Intent is filed and the client decides not to pursue an appeal, counsel should memorialize the content of the discussions and the decisional process of the client for the file. If the client does not want to proceed any further and does not desire a no merit report, the attorney may cease representation without involving this court or the trial court. Should a defendant later claim that he or she never wanted to waive the right to appeal and that counsel was ineffective for ceasing representation, that allegation will be resolved on a case-by-case basis. Any memorialization in the attorney's file will serve as evidence.

We vacate the judgment. We will appoint a referee by separate order to hear the *Machner* proceeding. Flores will be represented by counsel and the lawyer-client privilege will be deemed waived. This court will retain jurisdiction of this writ. After the referee has made the appropriate findings of fact, the record will be returned to this court for an ultimate decision on whether there was ineffective assistance of counsel.

*By the Court.*—Judgment vacated.

NETTESHEIM, P.J. (*dissenting*). I disagree with the majority's conclusion that appellate counsel need not obtain court approval to terminate representation of a

client prior to filing a postconviction motion, notice of appeal or no merit report. I conclude that Flores received ineffective assistance of appellate counsel when counsel terminated her representation of Flores without the approval of the court. Thus, I would reverse the judgment outright and reinstate Flores' right to pursue his postconviction relief.

The majority correctly begins its analysis by observing that the Notice of Intent to Pursue Postconviction Relief is a statutorily recognized filing which sets in motion the machinery and time limits relative to the postconviction/appellate process. *See* Rule 809.30, Stats. Majority op. at 281. The majority, however, goes on to discount the importance of this notice as it bears upon the issue before us for two reasons: (1) "the notice is not filed with the court of appeals"; and (2) the trial court is "done with the case." Majority op. at 281 (emphasis omitted).

I conclude that Flores' filing of the notice of intent with the clerk of the circuit court commenced the postconviction process in this case. When the public defender appointed appellate counsel to represent Flores in response to the notice of intent, such counsel became counsel of record and, therefore, was required to obtain the approval of the court before terminating her representation of Flores. I offer the following history and reasoning in support.

The Judicial Council notes to the original Rules of Appellate Procedure recited that "[t]he term 'postconviction relief,' as used in this Rule [809.30], includes new trial, reduction of sentence, and any other type of relief which the trial court is authorized to give, other than under s. 974.06." Judicial Council Committee Note, 1978, Rule 809.30, Stats. Notably, "postconviction relief" under this rule did not include an appeal.

However, shortly after the adoption of the new Rules of Appellate Procedure and even before their implementation, the Criminal Appeals Subcommittee of the Judicial Council began to examine whether Rule 809.30, Stats., should be "tightened" to reduce the time period between conviction and institution of the appellate process in order to assure that trial counsel meaningfully explored the right and option of appeal with the defendant, and to promote a smoother transition from trial counsel to appellate counsel. *See* Minutes of the Criminal Appeals Subcommittee (Dec. 8, 1983). The subcommittee's minutes indicate that this inquiry was prompted by the State Public Defender's Office which sought to expedite and clarify the procedure for initiating the postconviction process:

> It seemed to Mr. Vetzner [former chief of State Public Defender's Office, Appellate Division] that the *initiation of the appellate process* could proceed much more expeditiously and smoothly if the defendant were required to notify the court of his interest in pursuing an appeal and having counsel appointed. [Emphasis added.]

In response, the subcommittee proposed Rule 809.30, Stats., in substantially its present form to the General Projects Committee of the Judicial Council. The proposal introduced the concept of a filing by the defendant with the trial court which advised of a wish for representation in seeking postconviction relief. The subcommittee indicated that the proposed Rule would reduce the time *for initiating the appellate process:*

> Basically, the draft reduces from 45 to 10 or 20 days after sentencing the time for initiating the appellate process.

284

Letter from subcommittee reporter James Fullin to the Judicial Council's General Projects Committee (Jan. 13, 1984).

The General Projects Committee then forwarded the proposal to the Judicial Council. The April 13 and June 22, 1984 Judicial Council minutes reveal that the council saw the filing of the notice of intent as initiating the appellate process:

> The committee has reached an agreement that the time period should be shortened *and that the initiation of the appeal should be through a document filed in court rather than through out-of-court contact with the court reporters or the Public Defender's office.*

Minutes of the Meeting of the Judicial Council (Apr. 13, 1984) (emphasis added).

> [University of Wisconsin Law School] Prof. [Frank] Remington says that if we expect trial counsel to counsel the defendant about *initiating an appeal,* we should probably shorten the deadline to something like 10 days, as is the federal rule.
>
> . . ..
>
> Mr. Phelps asked how this discussion bore on the question of the 10 days *for initiating the appellate process.*
>
> . . ..
>
> Justice Abrahamson said she assumed the committee had not considered the conditional plea option because *it was concerned primarily with the procedure and timing for initiating the appellate process.*
>
> . . ..
>
> Judge Williams asked whether failure to comply with the 10-day time limit *for initiating the appellate process would foreclose the defendant from bringing in an appeal.*

. . ..
The short time deadline in today's proposal will only exacerbate that problem. Even extending the time period to 20 days would be helpful in this regard. That will allow at least a little more time for calm reflection *on whether to invoke the appellate procedure.*

Minutes of the Meeting of the Judicial Council (June 22, 1984) (emphasis added).

Finally, when the supreme court adopted the Judicial Council's proposed Rule 809.30, Stats., the court recited in its adopting order that the proposed amendment pertained to "Rules of Appellate Procedure and statutes *governing criminal procedure concerning the initiation of postconviction proceedings.*" Supreme Ct. Order, 123 Wis. 2d xi (1985) (emphasis added).[1]

Before the implementation of the Rules of Appellate Procedure in 1978, the supreme court alluded to the problems presented in many criminal cases by the lengthy hiatus between the judgment of conviction and the commencement of an appeal. *Whitmore v. State,* 56 Wis. 2d 706, 718, 203 N.W.2d 56, 63 (1973). In its original form, Rule 809.30, Stats., reduced this time by giving the defendant forty-five days in which to ask the public defender for postconviction representation. However, the history recounted above reveals that the purpose of the present Rule 809.30 was to further narrow this space to the present twenty days within which the defendant or counsel must file the notice of intent. And, as already

---

[1]A commentator, speaking to the then recent enactment of Rule 809.30, Stats., in its present form, also stated that the filing of the notice of intent commences the appellate process. *See* Kempinen, *The Role of Trial Counsel Under the New Rules of Criminal Appellate Procedure: The Decision to Appeal,* 58 Wisconsin Bar Bulletin 19 (1985).

noted, this history also reveals that the filing of the notice of intent commences the appellate process.[2] Rule 809.30(1)(a). Indeed, a defendant seeking such relief in a felony case *must* file such notice of intent. Rule 809.30(2); *see also* sec. 973.18(5), Stats.

In this case, following his conviction, Flores filed a Notice of Intent to Pursue Postconviction Relief pursuant to Rule 809.30(2)(b), Stats., and requested the appointment of counsel pursuant to subsec. (b)5 of the Rule. Pursuant to sec. 977.08, Stats., and Wis. Adm. Code sec. SPD 2.03, the public defender's office appointed counsel for Flores. Thus, Flores commenced a postconviction proceeding and counsel of record was appointed to represent Flores. However, when appointed counsel terminated her representation of Flores, she failed to obtain the approval of the court.

Where a judicial proceeding is commenced and counsel is of record, such counsel may not withdraw without the permission of the court. *See Dressler v. Racine County Court,* 163 Wis. 2d 622, 632, 472 N.W.2d 532, 536–37 (Ct. App. 1991); *see also Anders v. California,* 386 U.S. 738, 744 (1967). In my opinion, this important principle governs this case and requires reversal and reinstatement of Flores' right to pursue the postconviction relief denied by the circuit court.

The majority contends, however, that the courts have no business monitoring appointed counsel's abandonment of an appeal because the notice of intent is not

---

[2]Even under the prior Rule 809.30, Stats., where the concepts of postconviction motion and an appeal were not categorized under the single label of postconviction relief, the supreme court held that an appeal was commenced by the defendant's writing to the public defender's office asking for representation and informing the trial court of that fact. *State v. Firkus,* 119 Wis. 2d 154, 165–66, 350 N.W.2d 82, 88 (1984).

filed with the court of appeals. Here the majority seems to be saying that because there is no filing with us, we have no case upon which we can act.

This is not so. The notice of intent is, in fact, filed with the clerk of circuit court.[3] The majority seems to envision the trial court and the court of appeals as separate, unrelated entities in the postconviction process. I disagree. I see the filing of the notice of intent as triggering a postconviction process which can involve both levels of courts and requiring each to perform in its assigned area of responsibility when called upon to act.

In many cases in which a convicted defendant has filed a notice of intent, the court of appeals routinely makes rulings on motions which are filed before a postconviction motion, notice of appeal or no merit report is filed. Examples include motions seeking extensions of the various time limits set out in Rule 809.30, Stats., including the extensions of time within which to file a postconviction motion or notice of appeal; motions for bail pending appeal; motions to compel the production of delinquent transcripts; motions by defendants to discharge counsel of record and to seek newly appointed counsel; and motions for approval of substitution of counsel of record. The trial court also has authority to act in the case during this period of time.[4] *See, e.g.,* sec. 808.075(2), and Rules 809.30(2)(d), (e) and 809.31, Stats.

---

[3]The Rules of Appellate Procedure governing criminal appeals and civil appeals also require the notice of appeal to be filed with the clerk of circuit court. *See* Rules 809.30(2)(h) and 809.10(1)(a), Stats., respectively. Surely the majority would not argue that the situs of these filings would preclude us from addressing the appeal.

[4]Thus, I disagree with the majority's statement that "the trial court is done with the case." Majority op. at 281.

Although the practice of attorneys in the public defender's office may be different, I especially note that among the motions routinely filed with the court of appeals during this period are requests by counsel of record for leave to withdraw from the representation of a defendant. I assume that such is no longer necessary under the majority opinion.[5]

I assume the majority does not view the absence of the filing of the notice of intent with this court as a bar to our ruling on the host of motions which daily confront this court. Yet, the majority uses the absence of this filing to preclude us from monitoring counsel's critical decision to terminate representation of the defendant. In *Anders,* the United States Supreme Court ruled that a court-appointed appellate counsel must obtain the permission of the appellate court to withdraw where counsel has concluded that the defendant's cause is wholly frivolous. *Anders,* 386 U.S. at 744. Why is the same not so where an appeal may very well be meritorious?[6]

Under present practice, many counsel of record apply to us for leave to withdraw before ceasing representation of a client following the filing of the notice of intent. Such applications usually contemplate the continuance of the appeal either with successor counsel or with the defendant proceeding *pro se.* Sometimes, however, such an application contemplates an abandonment

---

[5] I assume the same is true with respect to requests by defendants to discharge counsel of record and to seek new counsel; likewise with substitutions of counsel.

[6] I see no basis for a different rule based upon whether counsel is privately retained or appointed. I read the law to require that, in either setting, court approval of an attorney's request to withdraw is required. The only distinction drawn by *Anders v. California,* 386 U.S. 738 (1967), is that appointed counsel must file a no merit report in support of the withdrawal request.

of the appeal. Regardless, before we rule on such a request, we assure that the defendant is aware of such an application, understands the consequences and, most importantly, is given an opportunity to respond. I fail to understand why such minimal effort on counsel's and the court's part is not required where the consequence to the defendant is the loss of the constitutional right to appeal. Whether viewed from the standpoint of legal requirements, good policy or sound case management, the majority decision is unwise.

To accommodate my concerns, I do not argue for a formal waiver from the defendant of the right to appeal. I simply argue for application of the well-established principle that the attorney of record must obtain the approval of the court before representation of the client in a pending judicial proceeding may cease.

If counsel and the defendant agree that the appeal is not to be pursued, all counsel need do is advise the court that counsel will take no further action in the matter and ask to be relieved of representation. The defendant should be notified of this application and allowed reasonable opportunity to respond or object. If the defendant objects, counsel remains obligated to represent the defendant or to file a no merit report. If the defendant does not object, the court may enter an order allowing counsel to withdraw.[7]

I do not pretend that such a process will eliminate future claims of ineffective assistance of appellate counsel. Such is not the primary objective of the process.

_____

[7]It may be that the request for leave to withdraw is more properly directed to the trial court during this period of time. Section 808.075(2), Stats., provides that "[i]n a case appealed under s. 809.30, the circuit court retains the power to act on all issues until the notice of appeal has been filed with the clerk of the trial court."

Rather, the goal is to allow the court to exercise its responsibility to assure that the departure of counsel from the postconviction proceedings is with the knowledge and consent of the defendant and the approval of the court. At the same time, however, the defendant's failure to object to counsel's request likely will constitute strong evidence against any future claim that appellate counsel was ineffective for failing to pursue postconviction relief.

The majority of appointed postconviction counsel (be they from the staff of the public defender's office or counsel appointed from the ranks of the private bar) properly perform their duties. However, we must recognize that such is not always the case. Occasionally, we see cases where postconviction counsel may not pursue the representation of the defendant with the requisite zeal.[8] Other times, counsel and the defendant may legitimately misunderstand each other—counsel believing that the defendant does not wish to pursue the postconviction process and the defendant believing just the opposite.

Regardless of which particular scenario is played out, the right to appeal is lost. In such a setting, the majority opinion places the burden on the defendant via the ineffective assistance of counsel route to regain that right. *See State v. Moats,* 156 Wis. 2d 74, 100–01, 457 N.W.2d 299, 311 (1990). The case law documents that such a claim almost invariably turns on a credibility assessment of the lawyer versus the ex-client. The same

---

[8]I do not suggest that postconviction counsel did not zealously represent Flores in this case. Past experience with counsel reveals a highly competent defender. I simply contend that counsel should have obtained the approval of the court before terminating her representation of Flores.

case law reveals, again nearly invariably, who loses that battle.

The court has the right and the duty to assure that the defendant knows that counsel is abandoning the postconviction process. In addition, the court is entitled and required to approve or disapprove such a decision. If this procedure is followed, I suggest that a collateral benefit will be fewer claims of ineffective assistance of appellate counsel and a more confident resolution of those that are asserted. The majority opinion shuts down this process. I respectfully dissent.