COURT OF APPEALS
DECISION
DATED AND FILED

June 21, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2137**

Cir. Ct. No. **2021TP5**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.M., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

D.L.,

      RESPONDENT-APPELLANT.

---

      APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1     WHITE, J.[1]  D.L. appeals the order terminating his parental rights to his daughter, A.M.  D.L. argues that the circuit court erred when it entered default judgment on the grounds for the termination of parental rights (TPR) without a finding of egregious conduct or failure to follow court orders.  Further, D.L. argues his counsel was ineffective for failing to present a defense and missing hearings.  Upon review, we reject D.L.'s arguments and we affirm.

## BACKGROUND

¶2     In January 2021, the State filed a petition to terminate the parental rights to A.M., born July 2016, who is the biological child of S.M. and D.L.[2]  A.M. was found to be a child in need of protection or services (CHIPS) in June 2019 and was placed into the care of the Division of Milwaukee Child Protective Services (DMCPS).  In May 2020, D.L. was confirmed to be the biological father of A.M. after a DNA test was filed in the underlying CHIPS case.  The State alleged abandonment, continuing CHIPS, and failure to assume parental responsibility as grounds for the TPR as to D.L.

### A.  Predisposition proceedings

¶3     D.L. and his trial counsel appeared at the January 29, 2021 status hearing on the TPR petition, which addressed appointing counsel for the father of two of S.M.'s other children, and the attempts made to reach and serve S.M.  It was determined that D.L. would enter his plea on the TPR petition at the next

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  The TPR petition also addressed four additional children of S.M., and their respective fathers.  S.M., the other fathers, and the other children are not at issue in this appeal.

hearing.[3] D.L. asked the court about the possibility of a video visit with A.M. and the court informed him that he should contact the case manager. The next hearing was held March 30, 2021, and neither D.L. not his trial counsel made an appearance. The State asked that the court find D.L. in default, but stated that it would not object if D.L. moved the vacate the default during the permanency plan hearing on April 5, 2021, provided he appeared at that hearing. The circuit court took the default motion under advisement.

¶4     D.L. and trial counsel did not appear at the April 5, 2021 permanency plan hearing. The court granted the State's motion to find D.L. in "default for failure to follow the [c]ourt's order and be here and participate in these proceedings." The "prove-up" of the grounds for the TPR and the dispositional phase of the TPR was scheduled for the next hearing.

¶5     At the July 15, 2021 hearing, D.L.'s trial counsel appeared, but D.L. did not. The ongoing case manager testified that she last had contact with D.L. eight or nine months before, that D.L. lived in Texas, and that A.M. had never resided with D.L. as far as the case manager was aware. She testified that D.L had not participated in any of the programming services offered to satisfy the conditions to place A.M. in his care. He had not satisfied the conditions of return before or after the TPR was filed. D.L. has had sporadic video visits with A.M. D.L. did not make himself available to sign a consent for DMCPS to take temporary guardianship of A.M. in December 2020. She further testified that D.L. has not participated in A.M.'s medical, educational, or professional appointments

---

[3] The hearings throughout this case were conducted over Zoom video teleconferencing because of the ongoing COVID-19 pandemic.

and he has not accepted or exercised responsibility for her daily supervision. Neither the guardian ad litem (GAL) nor trial counsel asked the case manager any questions. The court found that the State proved by clear and convincing evidence that the grounds for the TPR existed based on two allegations: (1) failure to assume parental responsibility pursuant to WIS. STAT. § 48.415(6), and (2) abandonment of A.M. The court then found D.L. unfit.

¶6 The case then moved to the dispositional phase, in which the court decided whether a TPR action was in the best interests of the child. The case manager testified that A.M. had been placed with her foster placement since she came into DMCPS care in 2019. Her foster mother was an adoptive resource for A.M. and was interested in adopting her. The case manager reviewed A.M.'s age and health and history with occupational therapy, speech therapy, and treatment for trauma. D.L.'s trial counsel did not ask the case manager any questions. The court then reviewed the factors under WIS. STAT. § 48.426(3), which must be considered when the court determines whether termination is in the best interests of the child. The court concluded:

> [T]here is a strong likelihood of adoption after termination of parental rights. There is nothing about the age or health of the child that would be a barrier to the child being adopted even [though] she has some issues as a result of her care or lack of care by her mother when she lived with her mother. She does not have a substantial relationship with either her mother or her father or any maternal or paternal family members … so it would not be harmful to the child in severing the legal relationship with the parents …. [A.M.] is only five years old and she is not able to express at least to us her wishes or as to her having an understanding of what adoption is about. The child has been removed from the home of a parent when she was two years old and it has been about three years. She will be better able to enter into a more stable and permanent family relationship as a result [of] termination taking into account the number of years she has been in foster care and if the

> TPR is not granted, she would probably languish in foster care and even though I find she is an age she is adoptable.

The court concluded that as a matter of law, the TPR was in A.M.'s best interests as proven by clear and convincing and satisfactory evidence. The circuit court signed the order terminating D.L's parental rights on July 16, 2021.

### B. Postdisposition proceedings

¶7 D.L. filed a notice of intent to pursue postdisposition relief on August 16, 2021. He filed his notice of appeal in December 2021. In January 2022, this court found good cause was shown and granted D.L's. motion for remand to the circuit court for postdisposition proceedings. On March 10, 2022, and March 23, 2022, the court held evidentiary hearings on D.L.'s claims that the trial court erred when it defaulted him on the grounds for the TPR and that trial counsel was ineffective.

¶8 D.L.'s postdisposition counsel argued that there was no evidence in the record that D.L. disobeyed a court order, therefore, it was inappropriate for the circuit court to grant default judgment against him on that basis. The court responded that D.L. was defaulted for failure to appear and to participate. The court stated that participation is significant because "[i]f someone is not participating, he had not entered a plea, he didn't enter a plea on the second date. He didn't show up for the permanency plan hearing to participate[.]" The court stated that the default was based on D.L.'s failure to appear and enter a plea to the TPR petition.

¶9 D.L.'s postdisposition counsel addressed confusion in the record over whether the next hearing referenced in the January hearing was scheduled for March 29, 2021, or March 30, 2021. The court stated it was the obligation of the

party to participate, to call the court with questions, and to confirm dates. The State then referenced that D.L. had the same Texas address throughout these proceedings and that:

> The State sent the petition that was filed on January 6th, 2021 to [D.L.] with all of the Zoom log in information, a copy of the summons and petition, the UCCJEA[4] affidavit and instruction on how to appear remotely and part of the summons had the instruction if you fail to appear for the remote hearing, the [c]ourt may hear testimony that supports the allegation in the attached petition and grant the request of the petitioner to terminate your parental rights.

The GAL then informed the court that even with any confusion over the March hearing date, a written notice was sent to D.L. for the April 5, 2021 hearing. The notice contained the phone numbers for the case manager and the court clerk in case D.L. had questions.

¶10 D.L.'s postdisposition counsel argued that in civil proceedings—which includes a TPR action—there is not a requirement that a person must appear if they are represented by counsel. The court noted that there is a difference if testimony from the represented party is required. Further, the court stated that a party must contribute and provide information to counsel so that counsel can be prepared to participate.

¶11 D.L's postdisposition counsel then called trial counsel. However, first, the court swore in D.L. to ask whether he would waive lawyer-client confidentiality, after some discussion about the necessity of such a waiver when a

---

[4] The Uniform Child Custody Jurisdiction and Enforcement Act. *See* WIS. STAT. § 822.01.

client files an ineffective assistance of counsel claim. D.L. refused to waive confidentiality.

¶12    Trial counsel testified that she sent all new clients an introduction letter referencing appearing at all hearings and warning them that failure to appear may result in a loss of legal representation and parental rights. She did not use the term "default" because it may be confusing. Trial counsel stated that all of her contact information was contained on the introduction letter and that her contact information did not change throughout the pendency of this case. The State questioned trial counsel about a string of emails between trial counsel and the State on April 5, 2021.[5] After refreshing her recollection with the emails, trial counsel stated she was stuck in a hearing in another county during D.L.'s hearing and then she remained in the Zoom waiting room for D.L.'s hearing until the judge brought her in and explained to her what had happened with regard to the default that day.

¶13    At the second hearing date, the court began with the issue of whether filing an ineffectiveness motion waived attorney-client confidentiality under *State v. Flores*, 170 Wis. 2d 272, 277-78, 488 N.W.2d 116 (Ct. App. 1992) ("We hold that when a defendant charges that his or her attorney has been ineffective, the defendant's lawyer-client privilege is waived to the extent that counsel must answer questions relevant to the charge of ineffective assistance."). The court then ordered trial counsel to testify despite D.L.'s objection.

---

[5] The GAL noted that the emails and letters referenced were not contained in the circuit court record; however, the circuit court concluded that the testimony was what mattered and the court did not need to see it. Accordingly, this information is not in the appellate court record and rely on the circuit court record.

¶14    Trial counsel testified that she appeared late for the March hearing because of her conflict in another court. She also stated that she appeared late for the April hearing after D.L. had been found in default. She stated that she wrote D.L. a letter in April after the default explaining what had happened and his options going forward. She stated that she had no contact with D.L. after that letter and before the July 15, 2021 dispositional hearing. After his rights were terminated, trial counsel called D.L.; however, the call was disconnected and when she called back, she was unable to reach him.

¶15    Trial counsel testified that she did not ask any questions at the prove-up or the dispositional phase of the July hearing. She stated she was "very careful about making sure that all of the points are made for the prove-up and for disposition and if there is nothing that is dispute[d] based on [her] review of the record, [she does not] ask any questions." She testified that she and D.L. had not had a conversation and that he had not provided her with any information or evidence. Without his input, she believed her advocacy was to ensure the fairness of the process. She would not "ask questions just to ask questions." Trial counsel testified that D.L. initially indicated that he wanted to contest the petition and in her April letter she invited him to engage with her; however, he did not call or communicate with her before she called him on July 15, 2021.

¶16    During cross-examination, trial counsel testified that her introduction letter to D.L. specifically stated that he had an obligation to appear at all hearings on time. She testified that D.L. did not contact her between the initial appearance in January 2021, and July 15, 2021, when she was able to reach him by phone. She explained that she could not effectively proceed in the case without information from D.L. and that without his input, she did not have questions to ask at the hearings. She testified that she was unable to file a motion to vacate the

default judgment because she did not have any information from D.L. as to why he did not appear. She testified that in her conversation with D.L. in January, she understood he wanted to contest the petition.

¶17 The GAL called D.L. as a witness. D.L. testified that he received a call from trial counsel in January and then in April after the default. He said after he lost his parental rights, he did not want to deal with trial counsel "because she never called [him] or nothing, talked about nothing and then nothing. Always calling me with an attitude and it was just ridiculous." He stated he received a copy of the termination of parental rights petition "in a written letter, lawyers for that, typed up in a written letter. What kind of shit is that?" He stated that his mailing address was his grandmother's house, where he did not reside, but he picked up his mail when his grandmother called him. He testified that he did not receive written notice with Zoom instructions for the April or July hearings. He testified that he tried to reach the case manager, he "kept trying to call and they never, never answer their phone."

¶18 Upon the court's questioning, D.L. stated that both the case manager and trial counsel were rude to him. D.L. testified that he received a letter from trial counsel but he did not receive court documents. During examination by the State, D.L. testified that he did not know how many hearings occurred after January 2021, but he tried to attend and tried to call the case manager and the court's clerk. He stated that he tried to call trial counsel every week from January and July and she never returned his calls. He stated that his mother tried calling the caseworker every two weeks, but he did not know if she had any response.

¶19 The GAL then called the case manager, who testified that she was the case manager for A.M. throughout the pendency of this case and was present at

the court hearings. She testified that D.L. and trial counsel attended the January hearing. She wrote down the next hearing as March 29 and attempted to login to the Zoom meeting that day and was informed the hearing was the next day, March 30. She noted that the foster parents also attempted to login on March 29th, but she did not see D.L.

¶20 During the pendency of the TPR, the case manager testified she spoke by telephone to D.L. on January 29, 2021, otherwise, she did not hear from him. She testified that her phone number remained the same throughout the case. Her office telephone system kept a record of all calls and voice mails left on her line and she only received one call from D.L., which occurred on January 29, 2021. She testified that on the notices of the April and July hearings, D.L.'s name and Texas address were also listed as recipients of the notices.

¶21 The court reviewed the situation, agreeing that it was "clear that [D.L.] wanted to have his daughter." It acknowledged the confusion about the March hearing date, but stated it was at least somewhat D.L.'s responsibility to call the court and seek information if he did not know what happened next. The court stated that D.L. was given notice of the April 5, 2021 hearing and he did not show or call the court. The court "found him to be in default for failure to join in the action because no plea had been entered, failure to join and failure to participate." Upon reviewing the events that transpired, the court did not "find a basis for vacating the default and reinstating [D.L.'s] context posture." The court found that D.L. "did nothing to make himself available to the court on April 5th" and he had a responsibility to reach out either to the case manager or the court directly.

¶22 The court continued that it did not know how a lawyer in a civil or criminal case "can represent someone if the party they are representing doesn't give them the information to present to the [c]ourt." It found that "[D.L.] had not remained in contact or participated or provided information to his lawyer so that she could proceed [on] that evidence." The court found that there was no contact between trial counsel and D.L. "between April 5th and July 15th" even though trial counsel tried. D.L. said that he called and texted trial counsel, but the court stated this came down to a "credibility issue as to who [to] believe" and the court believed trial counsel did try to reach out to D.L. by phone and in writing. The court stated that D.L. did not participate and cooperate with trial counsel, therefore, "What arguments could she make? What questions could she ask?" The court concluded that there was no "error or ineffective assistance of counsel by [trial counsel] in not asking questions even though the [c]ourt asked her and gave her permission to do so but she had no information." The court denied D.L.'s postdisposition motion finding that there was no waiver of counsel by trial counsel. *See* WIS. STAT. § 48.23(2). Finally, the court found there was no structural error in the case. The court denied the request to reopen the judgment and vacate the default.

¶23 This appeal follows.

**DISCUSSION**

¶24 D.L. renews his argument that the circuit court erred to enter default judgment against him on the grounds for the TPR when it was not shown that he failed to obey court orders or exhibited egregious conduct. Second, he argues that trial counsel provided ineffective assistance of counsel for missing hearings, not asking questions, and failing to present a defense on his behalf. Finally, he

11

contends that trial counsel's inaction in this case amounted to a waiver of counsel. He argues this meant that the State's case was not subject to the adversarial process, which constitutes structural error requiring a new contested hearing on the termination of D.L's parental rights. For the reasons discussed below, we reject D.L.'s arguments.

### I.    *Default judgment*

¶25    The decision to terminate parental rights is within the discretion of the circuit court. *See Gerald O. v. Susan R.,* 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). Moreover, the decision to grant or deny a motion for default judgment requires an exercise of sound discretion. *Split Rock Hardwoods, Inc. v. Lumber Liquidators, Inc.*, 2002 WI 66, ¶63, 253 Wis. 2d 238, 646 N.W.2d 19. We will sustain a circuit court's discretionary decision unless the court erroneously exercises its discretion. WIS. STAT. § 805.17(2). A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach. *Dane Cnty. DHS v. Mable K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶26    Although default judgments are "regarded with particular disfavor," they may be granted pursuant to the circuit court's inherent or statutory authority. *Split Rock Hardwoods, Inc.*, 253 Wis. 2d 238, ¶¶42 n.15, 64. At issue here, a circuit court may grant a default judgment if no issue or law or fact has been joined and the time for joining issue has expired. WIS. STAT. § 806.02(1). However, a circuit court has authority to enter default judgment against a party who fails to appear at trial, § 806.02(5); fails to comply with a discovery order, WIS. STAT. § 804.12(2)(a); or as a sanction for failing to comply with court orders,

WIS. STAT. §§ 802.10(7), 805.03. *See Evelyn C.R. v Tykila S.*, 2001 WI 110, ¶17, 246 Wis. 2d 1, 629 N.W.2d 768. Conversely, a circuit court judge has discretion to deny a motion for default judgment "when it determines the judgment would be reopened under [WIS. STAT.] § 806.07." *Johns v. County of Oneida*, 201 Wis. 2d 600, 605, 549 N.W.2d 269 (Ct. App. 1996).

¶27    D.L. argues that the circuit court erred to enter default judgment when he did not disobey court orders; therefore, the court had no reason to sanction his conduct. *See Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273-74, 470 N.W.2d 859 (1991) *overruled on other grounds by Industrial Roofing Servs., Inc. v. Marquardt*, 2007 WI 19, 299 Wis. 2d 81, 726 N.W.2d 898 The State argues that the circuit court was not entering default judgment as a sanction, but instead for failure to join under WIS. STAT. § 806.02(1). At the postdisposition evidentiary hearing, the circuit court clearly explained that D.L. did not enter a plea and did not participate in the case. The record reflects that the court was acting under its authority under § 806.02(1) even if it did not name the statutory authority. Further, the record reflects that the court considered the relevant facts related to D.L.'s failure to appear or communicate with counsel or the court, applied the proper standard of law, and demonstrated rational decision-making in entering the default judgment. Accordingly, we conclude that the circuit court did not erroneously exercise its discretion when it entered the default judgment.

¶28    Further, in accordance with the importance and impact of this decision, our examination of the record shows there was a factual basis to support the court's findings of grounds for termination. *See Evelyn C.R.*, 246 Wis. 2d 1, ¶33. The case manager testified that D.L. had not participated in any of the programming services offered to satisfy the conditions to place A.M. in his care.

He had not satisfied the conditions of return before or after the TPR was filed. D.L. has not participated in A.M.'s medical, educational, or professional appointments and he has not accepted or exercised responsibility for her daily supervision. The record reflects that grounds for the TPR on this basis existed.

¶29    Additionally, we reject D.L.'s argument that the court erred under the holdings of *Evelyn C.R.*, 246 Wis. 2d 1, ¶24 ("Because it failed to take evidence at the fact-finding hearing, the circuit court had no evidentiary basis to support its finding of abandonment prior to finding grounds for the termination of Tykila's parental rights."). D.L.'s reliance on *Evelyn C.R.* is misplaced. There, the circuit court entered default judgment without requiring the State to offer proof to support the grounds in the TPR petition. This case is factually distinct because the State presented testimony from the case manager that provided clear and convincing evidence that the grounds for the TPR existed.

¶30    Finally, we reject D.L.'s argument that failure to join is an improper basis for default judgment in a TPR. Entering default judgment within TPR proceedings is consistent with WIS. STAT. § 806.02 because a TPR is civil in nature. *See* WIS. STAT. § 801.01 ("Chapters 801 to 847 govern procedure and practice in circuit courts of this state in all civil actions and special proceedings whether cognizable as cases at law, in equity or of statutory origin except where different procedure is prescribed by statute or rule."). A default judgment may be entered against a parent in a TPR case as to grounds for unfitness, although the circuit court must receive evidence showing unfitness before it may do so. *See Evelyn C.R.*, 246 Wis. 2d 1, ¶¶17, 24.

¶31    In reaching this decision, we acknowledge that the "[t]ermination of parental rights proceedings require heightened legal safeguards to prevent

14

erroneous decisions." *See State v. Shirley E.*, 2006 WI 129, ¶24, 298 Wis. 2d 1, 724 N.W.2d 623. However, our review of the record supports our conclusion that the circuit court properly followed TPR procedure and made a well-reasoned decision when it granted default against D.L. in April 2021. D.L. had notice of the hearing, he was aware of the importance of the TPR proceedings, and he had access to reach trial counsel or the court with any questions. We agree with the circuit court's conclusion that D.L. did not participate personally or by communicating a defense to trial counsel.

## II. *Ineffective assistance of counsel*

¶32     D.L. next argues that trial counsel was ineffective. D.L. argues that trial counsel's performance was deficient because she did not appear at the March and April hearings, and she did not ask questions or present a defense at the July hearing. He argues she had a duty to provide zealous, competent and independent representation.

¶33     A parent contesting a TPR petition has a right to the effective assistance of counsel. WIS. STAT. § 48.23(2); *Oneida Cnty. DSS v Nicole W.*, 2007 WI 30, ¶33, 299 Wis. 2d 637, 728 N.W.2d 652. To determine whether a parent received the effective assistance of counsel, we apply the two prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A parent must show both that counsel's performance was deficient and that the parent was prejudiced by counsel's performance. *Id.* To establish deficient performance, the parent must show that counsel's conduct fell below an objective standard of reasonableness. *Id.* at 687-88. To establish prejudice, the parent "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* at 694. If a parent fails to make a showing on one prong, we need not address the other. *Id.* at 697.

¶34 This court benefits from the evidentiary hearing conducted by the circuit court that focused on trial counsel's performance and reasoning. An evidentiary hearing preserving trial counsel's testimony allows this court to "determine whether trial counsel's actions were the result of incompetence or deliberate trial strategies." *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). "Trial strategy is afforded the presumption of constitutional adequacy." *State v. Breitzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93. Trial counsel's performance "need not be perfect, indeed not even very good, to be constitutionally adequate." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted).

¶35 Here, the record reflects that trial counsel had received no information from D.L. to inform a trial strategy or present a defense. The circuit court found credible trial counsel's account of her attempts to reach D.L. Trial counsel testified that she did not ask questions at the July hearing because she had no information from D.L. She stated, "I believe my advocacy was ensuring the fairness of the proceeding because I am not just going to ask questions just to ask questions. They have to be purposeful." This strategy was limited but reasonable under the facts and circumstances of this case.

¶36 D.L. argues that trial counsel failed to present a defense and failed to serve as adversary counsel. It is true that an attorney serving as appointed counsel in TPR proceedings has the "duties and responsibilities of lawyer to client … set forth in the Code of Professional Responsibility promulgated by

[the Wisconsin Supreme Court]." ***E.H. v Milwaukee Cnty.***, 151 Wis. 2d 725, 736, 445 N.W.2d 729 (Ct. App. 1989). Those duties include confidentiality, "exercising independent professional judgment on behalf of a client, representing a client competently, and representing a client zealously within the bounds of the law." ***Id.*** However, here, the inhibiting factor in trial counsel's representation was D.L. himself. The record reflects that the court found trial counsel's testimony about her attempts to reach D.L. credible. She exercised a reasonable strategy to monitor the case and ensure fairness, the only steps she believed she could take without information from D.L. We conclude that D.L. has failed to show that trial counsel's performance was deficient.

¶37 Even if we turn to the second ***Strickland*** prong and consider the issue of prejudice, D.L. fails to show that counsel's performance adversely affected the outcome of the proceedings. D.L. complains that trial counsel did not ask questions despite having the opportunity. He does not explain what questions trial counsel could have asked or what defense she did not pursue. Trial counsel testified she was prepared to advocate if the State's presentation was unfair. We conclude that D.L. has failed to show prejudice from trial counsel's performance.

¶38 During the ineffectiveness inquiry, we must made every effort to avoid the "distorting effects of hindsight." ***Strickland***, 466 U.S. at 687. The record reflects that trial counsel took reasonable actions to represent D.L. There was nothing irrational or capricious about her actions or even as D.L. terms it, her inaction. *See* ***Breitzman***, 378 Wis. 2d 431, ¶75. The circuit court determined that trial counsel did not err or provide ineffective assistance. We agree. We conclude that D.L. has failed to show that trial counsel's performance was ineffective.

### III. Structural error

¶39     Finally, D.L. argues that trial counsel's failures meant that the State's case was not subject to the adversarial process, which constitutes structural error requiring vacating the default judgment and conducting a new hearing on the TPR petition. Structural errors affect "'[t]he entire conduct of the trial from beginning to end.' An error also may be structural because of the difficulty of determining how the error affected the trial." *State v. Pinno*, 2014 WI 74, ¶49, 356 Wis. 2d 106, 850 N.W.2d 207 (quoting *Arizona v. Fulminante*, 499 U.S. 309 (1991)). "Although 'most constitutional errors can be harmless,' there are a very limited number of structural errors that require automatic reversal." *Pinno*, 356 Wis. 2d 106, ¶49.[6] (quoting *Neder v. United States*, 527 U.S. 1, 8, (1999)). Whether a particular error is structural and not subject to a harmless error review is a question of law we review independently. *State v. Nelson*, 2014 WI 70, ¶18, 355 Wis. 2d 722, 849 N.W.2d 317; *State v. C.L.K.*, 2019 WI 14, ¶12, 385 Wis. 2d 418, 922 N.W.2d 807.

¶40     D.L. first argues that trial counsel's inaction amounted to a waiver of counsel. WISCONSIN STAT. § 48.23(2) expressly requires that any waiver of counsel must be knowing and voluntary. D.L. relies upon *Shirley E.*, where our supreme court held that a parent retained a right to counsel throughout the TPR proceedings, even after default. *See Shirley E.*, 298 Wis. 2d 1, ¶56. We distinguish that in this case, the circuit court did not dismiss D.L.'s attorney after

---

[6] "The limited class of structural errors include: complete denial of the right to counsel, a biased judge, excluding members of the defendant's race from a grand jury, denial of the right to self-representation, denial of the right to a public trial, and a defective reasonable doubt instruction." *State v. Pinno*, 2014 WI 74, ¶50, 356 Wis. 2d 106, 850 N.W.2d 207 (footnotes omitted).

the default, as happened in *Shirley E.*, and trial counsel appeared and participated in the July hearing within the reasonable strategy of ensuring fairness. Therefore, we conclude that trial counsel's actions did not constitute a waiver of counsel.

¶41 D.L. next argues that because counsel's performance was so lacking, the State's case was not subject to the adversarial process and he was deprived of representation. "Courts have long recognized that the total deprivation of counsel in criminal proceedings is a 'structural error.'" *Shirley E.*, 298 Wis. 2d 1, ¶62. Our examination of the record does not support that D.L. faced a *Shirley E.* deprivation of counsel. *See id.*, ¶3. Trial counsel appeared at the July hearing on the record, and was in contact with the court for the March and April hearings, even if she was late and did not appear on the record. Further, the circuit court did not bar trial counsel from participating. *See id.*, ¶16. D.L.'s argument that the counsel did not fulfill her role in the adversarial system ignores that it was D.L.'s failure to participate that prevented trial counsel from having the information needed to present a defense and limited trial counsel to ensuring fairness in the proceedings. D.L. fails to show how trial counsel could dispute the State's factual basis for the TPR without his input and information. We discern no structural error in this case.[7]

---

[7] The State argues that the alleged errors in counsel's conduct are subject to the harmless error standard. WIS. STAT. § 805.18(1) ("The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party."). It is a clear beyond a reasonable doubt that any alleged errors within trial counsel's representation does not undermine our confidence in the outcome of the proceedings.

**CONCLUSION**

¶42    For the reasons stated above, we conclude that the circuit court did not err when it entered default judgment on the grounds for the TPR for D.L.'s failure to join, pursuant to WIS. STAT. § 806.02(1). We conclude that D.L. has failed to show that trial counsel was ineffective and failed to show that structural error occurred in this case. Accordingly, we affirm the circuit court order terminating D.L.'s parental rights.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.